2004 WY 11

Justin P. COATES, Rachel L. Coates, and Rak Holmes Coates, a minor, by and through his next friend, Justin P. Coates, Appellants (Plaintiffs),

v.

Ron ANDERSON, as successor trustee of Dixie Anderson Trust, Appellee (Defendant).

No. 03–84.

Supreme Court of Wyoming.

Feb. 19, 2004.

---

Representing Appellants: James K. Lubing of James K. Lubing Law Office, Jackson, WY.

Representing Appellee: James E. Phillips and Geoffrey J. Phillips of James E. Phillips, P.C., Evanston, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] In this action, appellants Justin P. Coates, Rachel L. Coates, and Rak Holmes Coates, a minor, appeal the partial summary judgment entered by the district court in favor of appellee Ron Anderson, as successor trustee of the Dixie Anderson Trust (Trust).[1] Appellants assert the district court erred in ruling that Ron Anderson, individually, was acting as an independent contractor when he parked a tractor in an allegedly negligent manner which caused an accident resulting in appellants' injuries. Appellants further contend the district court erred when it found Ron Anderson was not acting as the successor trustee of the Trust when the accident occurred. We affirm.

## ISSUES

[¶2] Appellants set forth the following issues on appeal:

1. Did the district court err in finding that no genuine issues of material fact existed and in ruling as a matter of law that Dixie Anderson as Trustee of the Dixie Anderson Trust was not vicariously liable for the acts or omissions of Ron Anderson?

2. Did the district court err in refusing to find that a genuine issue of material fact existed as to whether, under the terms of the Illa Dixie Anderson Trust Agreement,

Dixie Anderson had failed to serve as Trustee so that Ron Anderson had become successor Trustee of the Dixie Anderson Trust?

## FACTS AND PROCEDURAL HISTORY

[¶3] On February 8, 2000, around 6:30 p.m., Rachel L. Coates was driving on Wyoming State Highway 237 in Lincoln County, Wyoming, with passengers Justin P. Coates, her husband, and Rak Holmes Coates, her son, when their vehicle collided with a parked tractor owned by Ron Anderson. This accident caused appellants to incur substantial injuries. Subsequently appellants filed a complaint against Ron Anderson, individually, but then later amended their complaint to also include the Trust. The amended complaint alleged that the Trust was vicariously liable for appellants' damages because Ron Anderson was acting as an agent of the Trust under the doctrine of respondent superior or, alternatively, under a de facto partnership with the Trust.

[¶4] After discovery was conducted, the Trust filed a motion for summary judgment that was opposed by appellants. The district court granted this motion stating:

Viewing the evidence most favorably to the Plaintiff[s], the Court finds no evidence which would create an inference to support the Plaintiff[s'] respondeat superior claim that the Defendant, Ron Anderson, was acting on behalf of Dixie Anderson or the Trust as trustee or manager or that Ron Anderson was a partner with Dixie Anderson or the Trust when the collision occurred involving Mr. Anderson's tractor and the Plaintiffs' vehicle.

The undisputed facts are that Defendant's mother, Dixie Anderson as trustee, allowed him to use the trust property as part of his ranching operation and received, in return, care taken of the property and sporadic payment depending on the crops. There is no evidence of Mrs. Anderson exercising control over the Defendant Ron Anderson's conduct of the operations, or of her assuming duties with

1. On April 26, 2003, during this appeal, Dixie Anderson died. Ron Anderson, as successor trustee of the Trust, was substituted as a party in this case.

respect to safety or of them having an employment contract. Mr. Anderson's payment to Mrs. Anderson for the use of the land and taking care of the property is more like a lease or license than a partnership because there is no showing of an agreement to share profits and losses. Mr. Anderson was driving the tractor for his own purposes of feeding his livestock and had parked it on the highway where the collision occurred.

This appeal followed.

### STANDARD OF REVIEW

[¶ 5] We recently reiterated our long-standing standard of review in summary judgment cases in *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 8, 61 P.3d 1255, ¶ 8 (Wyo.2003) (citing *Amoco Prod. Co. v. Board of County Comm'rs*, 2002 WY 154, ¶ 10, 55 P.3d 1246, ¶ 10 (Wyo.2002) and *Bevan v. Fix*, 2002 WY 43, ¶ 13, 42 P.3d 1013, ¶ 13 (Wyo. 2002)):

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000); *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

We may uphold the grant of summary judgment upon any proper legal ground finding support in the record. *Polo Ranch Co.*, at ¶ 8; *Bevan*, at ¶ 26.

Little mystery remains concerning our willingness to affirm summary judgments, provided there is no genuine issue of material fact and the law clearly entitles the moving party to prevail. *Martin v. Farm-*

*ers Ins. Exchange*, 894 P.2d 618, 620 (Wyo. 1995). . . .

The moving party bears the initial burden of establishing a prima facie case for summary judgment. Thereafter, the party opposing summary judgment becomes obliged to marshal specific facts, as contrasted with general or conclusory allegations, which establish a genuine issue of material fact. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324–25 (Wyo.1995).

A material fact has been defined as one having some legal significance, that is, under the law applicable to a given case, it would control in some way the legal relations of the parties; as one upon which the outcome of litigation depends in whole or in part; as one on which the controversy may be determined; as one which will affect the result or outcome of the case depending upon its resolution; and one which constitutes a part of the plaintiff's cause of action or of the defendant's defense.

*Mize v. North Big Horn Hosp. Dist.*, 931 P.2d 229, 232 (Wyo.1997) (quoting *Johnson v. Soulis*, 542 P.2d 867, 871–72 (Wyo.1975) (footnotes omitted)).

### DISCUSSION

#### Independent Contractor

[¶ 6] Initially, appellants argue the Trust did not establish the lack of genuine issues of material fact as to whether an independent contractor relationship existed between Ron Anderson and the Trust. Citing our holding in *Combined Ins. Co. of America v. Sinclair*, 584 P.2d 1034, 1042–43 (Wyo. 1978) as authority, appellants contend that the Trust failed to present sufficient evidence proving that 1) the Trust did not have the right to control the details of Ron Anderson's work, and 2) the Trust did not retain the right to terminate Ron Anderson without incurring liability. Therefore, appellants assert that the district court incorrectly granted summary judgment in favor of the Trust.

[¶ 7] In *Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1184 (Wyo.1994), this court clearly adopted the general proposition set forth in the Restatement, Second, Torts

§ 409 (1965), that an employer of an independent contractor is not liable for physical harm to another caused by an act or omission of the contractor or his servants. *See also Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo.1988); *Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169, 1176 (Wyo.1989); *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 898 (Wyo.1986); *Noonan v. Texaco, Inc.*, 713 P.2d 160, 164–67 (Wyo. 1986); and 41 Am.Jur.2d, *Independent Contractors* § 24 (1968). Thus, with respect to vicarious liability, the controlling question is whether or not Ron Anderson was an independent contractor of the Trust. *See Stephenson*, at 1176; *Noonan*, at 165. We stated in *Noonan*, at 166 (quoting *Simpson v. Home Petroleum Corp.*, 770 F.2d 499, 506–7 (5th Cir.1985)):

[T]he existence of a master-servant relationship is a necessary part of the plaintiff's case when recovery is sought on a respondeat superior theory, and in that regard "the essential inquiry is whether or not the employer has the contract right to control the opposite contracting party in the details of the work to be performed." [Citation.] Such a right to control is a prerequisite of the master-servant relationship. Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship. Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily negatives the other, each depending on opposite answers to the same right of control inquiry.

[¶ 8] In determining whether an independent contractor relationship exists, this court has recognized two primary areas for consideration. The premier consideration is whether the employer has the right to control the details of the work wherein liability is sought to be established. Ordinarily this is a question of fact for the jury but becomes one of law when only one inference can be drawn. *Combined Ins.*, at 1042; *Noonan*, at 165–67.

In addition to the right of control, another test (or perhaps an indicia of the right-of-control test) is said to be whether the right to terminate the employment is re-tained and can be exercised without incurring liability. In *Fox Park Timber Company v. Baker*, [53 Wyo. 467, 84 P.2d 736 (1938) ], and repeated in *Brubaker v. Glenrock Lodge* [*Int'l Order of Odd Fellows*, 526 P.2d 52 (Wyo.1974) ], we said:

... Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant.

*Combined Ins.*, at 1042–43.

[¶ 9] The evidence reviewed by the district court was that contained within the affidavit and deposition testimony of Dixie Anderson and the deposition testimony of Ron Anderson. This testimony established that, in 1997, the Trust was established and acreage with a house and approximately 300 acres of ranch land were deeded to the Trust. Dixie Anderson was appointed as the trustee for the Trust. Dixie Anderson's five children, including Ron Anderson, were named beneficiaries of the Trust and were to share equally in the Trust property after Dixie Anderson's death. At the time of the accident, Dixie Anderson lived by herself and worked part time for a meat packing plant. She also received social security. Further, the Trust owned no livestock and did not utilize the Trust property for income production purposes.

[¶ 10] From the time of his father's death, Ron Anderson, under an oral agreement, helped his mother Dixie Anderson with the ranch land as a "caretaker." This work entailed primarily the fixing of fences, minor repairs, tearing down structures, some irrigation work, and generally looking out for the security of the land. In performing these tasks, Ron Anderson used his own tools. Ron Anderson was not paid by the Trust for his services nor did the Trust instruct him on safety or control his activities. Rather, Ron Anderson acted independently and ran his own cattle on the ranch land. From time to time, Ron Anderson paid the

Trust for feed and hay depending on the hay yield on the ranch land.

[¶ 11]  The tractor involved in the accident was the sole property of Ron Anderson.  The accident did not occur on Trust property.  At the time of the accident, Ron Anderson was tending to his own business affairs regarding his cattle.  The Trust was not involved with Ron Anderson's cattle business and did not share in any profits made on his cattle operation.  Finally, Dixie Anderson testified that the Trust did not have any employees.

[¶ 12]  Given this testimony, the Trust met its burden of proof that, at a minimum, an independent contractor relationship existed between Ron Anderson and the Trust.  The burden then shifted to appellants to present the district court with established facts refuting the Trust's initial summary judgment showing.  However, appellants did not submit any facts to the district court showing that the Trust retained control over Ron Anderson concerning the work he performed for the Trust.  Appellants, therefore, failed to refute the Trust's summary judgment showing, and no genuine issue of material fact existed making summary judgment in favor of the Trust proper.

[¶ 13]  Appellants merely argue that the true issue is not whether the Trust actually exhibited control over Ron Anderson, but whether the Trust could have exhibited control over him.  Thus, appellants proffer that all the Trust was able to establish was that the Trust never exercised control over Ron Anderson's activities, not that the Trust did not have any such right.  However, we recognized long ago in *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189, 194 (1933):

In this view, then, that the right of control of the physical movements—the automobile—is the decisive inquiry, it becomes important what the record discloses in that regard.  The evidence shows that the Maytag Company furnished Morris no rules or regulations to govern him in the performance of the work but that the means and manner thereof was left to him.  That, perhaps, does not definitely show that the right of control was not in the company. The fact that the company did not exercise control does not show that it did not have the right of control, though it may be some evidence thereof.  It has been held that in the absence of a stipulation the existence or nonexistence of the right must be determined by reasonable inferences shown by the evidence.  *Press Pub. Co. v. Acc. Comm.,* 190 Cal. 114, 210 P. 820; *May v. Farrell,* 94 Cal.App. 703, 271 P. 789.  Among the points frequently taken into consideration is the fact of the right of discharge.  14 R.C.L. 72.  But we take it that that right exists in the vast majority of cases of the character under consideration.  And it has been said that it is not, by the later cases, considered any decisive test.  *Leech v. Timber Company,* [161 Wash. 426, 297 P. 203 (1931)].  In the case just cited the court said that "there is no evidence showing nor evidence from which it may be reasonably inferred that appellant had any control or supervision of Jones in the operation of the car or the manner in which delivery of the tools was to be effected," and therefore held Jones to be an independent contractor.  In *General Exchange Ins. Co. v. Findlay,* 219 Ala. 193, 121 So. 710, the court seems to hold that unless an express reservation of the right of control may be inferred from the evidence, none can be held to exist.  And in *McCarthy v. Souther,* [83 N.H. 29, 137 A. 445 (1927)], in which there was no evidence as to the right of control, the New Hampshire court holds that the mere fact that the service performed by a salesman is in the furtherance of the employer's business is not enough, and that when no right of control may be implied from the situation, and none has been expressly reserved, the mere fact that the relationship is of agency or service is not enough to subject the employer to liability.

We find no reason to depart from this well expressed legal analysis of Justice Blume, especially in this case where the undisputed facts establish that 1) the tractor was personally owned by Ron Anderson, 2) Ron Anderson was tending to his business concerning his cattle at the time of the accident, and 3) no employer/employee relationship can be shown to exist between the Trust and Ron Anderson.  There is no evidence show-

ing nor evidence from which it may be reasonably inferred that the Trust could have controlled or supervised Ron Anderson in the operation of the tractor or the manner in which he performed services for the Trust. Accordingly, it was proper as a matter of law for the district court to conclude that Ron Anderson was an independent contractor. Unless an express reservation of the right of control may be inferred from the evidence, none can be held to exist.

■ 14] Appellants further argue that the Trust did not satisfactorily establish the existence of any contract or the terms of that contract defining the relationship between Ron Anderson and the Trust. Accordingly, appellants contend that it is impossible for the district court to have been able to characterize whether Ron Anderson was acting as an independent contractor or employee of the Trust. Appellants wrongfully conclude that only a written contract can provide evidence of the relationship between the Trust and Ron Anderson. Obviously, such is not the case. Indeed, this court has often utilized both the terms of a contract, whether written or oral, and other evidence of the control exercised to determine the relationship that existed between parties. As stated in *Natural Gas Processing Co. v. Hull,* at 1184–85:

> Our first area of inquiry would ordinarily be to the written contract between NGP and TWS. Although the contract is not conclusive evidence of the status of the relationship between parties, it is a strong indication of the association intended. See *Noonan,* 713 P.2d at 165. In this case, however, no written contract exists. Duane Winkler testified that NGP does not normally enter into written agreements with workover companies, and did not enter into a written contract with TWS. We, therefore, must look to the record to determine whether NGP controlled, or had a right to control, TWS' performance sufficient to establish a duty to TWS' (an independent contractor's) employees.

In a like manner, because there was no written contract in this case, it became necessary for the district court to look at the undisputed evidence to determine whether the Trust controlled or had the right to control Ron Anderson's performance of services for the Trust.

### Agency

■ [¶ 15] Appellants very summarily proffer that the evidence presented creates a genuine issue of material fact as to whether Ron Anderson was acting as an agent of the Trust at the time of the accident. We do not find appellants' argument persuasive. The undisputed evidence established that Ron Anderson acted as an independent contractor for the Trust. At the time of the accident, Dixie Anderson was the appointed trustee for the Trust and in such capacity was the sole person responsible for any formal actions taken by the Trust. Moreover, the tractor involved in the accident was the sole property of Ron Anderson and, at the time of the accident, Ron Anderson was tending his own business affairs regarding his cattle. Therefore, the undisputed facts establish that Ron Anderson was not acting as an agent for the Trust when the accident occurred.

■ [¶ 16] Similarly, no de facto partnership existed between the Trust and Ron Anderson. As recognized by the district court, the evidence presented established that Ron Anderson's sporadic payments to the Trust for the use of the land and taking care of the Trust property is more like a lease or license than a partnership because there is no showing of an agreement to share profits and losses. The Trust was not involved with Ron Anderson's cattle business and did not share in any profits made on his cattle operation.

### Successor Trustee

■ [¶ 17] Appellants briefly contend that genuine issues of material fact remain as to whether Dixie Anderson had failed to serve as trustee of the Trust, so that Ron Anderson had become successor trustee of the Trust and was acting in such official capacity at the time of the accident. Again, we find this argument unpersuasive. The only evidence before the district court established that, in 1997, the Trust was established by Dixie Anderson, and acreage with a house and approximately 300 acres of ranch land were deeded to the Trust. Dixie

Anderson was then appointed as the trustee for the Trust. Dixie Anderson's five children, including Ron Anderson, were named beneficiaries of the Trust and were to share equally in the Trust property after Dixie Anderson's death.

[¶ 18] At the time of the accident, Dixie Anderson was the appointed trustee of the Trust and in such capacity was the sole person responsible for any formal actions taken by the Trust. As trustee of the Trust, Dixie Anderson had the power to "hold, manage, invest and reinvest the trust estate." She also had the express powers to retain, sell, transfer, exchange, convert or otherwise dispose of, invest and reinvest, insure or not insure, lease, possess, manage, develop, subdivide, control, partition, mortgage, or otherwise deal with any and all property held within the Trust. Indeed, the Trust gave Dixie Anderson, as trustee, the power to make repairs, replacements and improvements, structural or otherwise, or abandon the property of the Trust if deemed to be worthless or not of sufficient value to warrant keeping or protecting it. These powers further included the right to fail to pay taxes, water rents, assessments, repairs, maintenance and upkeep on the Trust property and to even convey the property for nominal consideration or without any consideration. Thus, Dixie Anderson, as the appointed trustee of the Trust, had broadly enumerated powers to administer the Trust within her discretion. Furthermore, the Trust iterated that in the event that Dixie Anderson, as the appointed trustee of the Trust, resigned or failed to serve for any reason, Ron Anderson would be appointed successor trustee of the Trust. For such purposes, failure to serve included, without limitation, death or incapacity.

[¶ 19] Appellants failed to marshal any specific facts, as contrasted with general or conclusory allegations, to raise a genuine issue of material fact which established that Dixie Anderson, as trustee of the Trust, failed to serve in such capacity requiring Ron Anderson to be appointed a successor trustee at the time that the accident occurred. Appellants merely proffer accusations of Dixie Anderson's failure to properly act as trustee for the Trust with no basis in fact and then summarily conclude that Ron Anderson therefore must be assumed to have succeeded his mother as trustee of the Trust. Such allegations alone are insufficient to raise a material question of fact.

## CONCLUSION

[¶ 20] For those reasons indicated above, we hold that no material questions of fact existed in this case and that the Trust, as a matter of law, was entitled to summary judgment. We, therefore, affirm the district court's ruling granting summary judgment in favor of the Trust.