# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 35

### OCTOBER TERM, A.D. 2013

### March 11, 2014

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF TARA L.
KOBIELUSZ:

CIRCLE C RESOURCES, INC.,

Appellant
(Petitioner),

v.

TARA L. KOBIELUSZ,

and

STATE OF WYOMING, ex rel., WYOMING
WORKERS' SAFETY AND COMPENSATION
DIVISION,

Appellees
(Respondents).

No. S-13-0085

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
    Keith R. Nachbar, Keith R. Nachbar, P.C., Casper, Wyoming.

*Representing Appellee, Tara L. Kobielusz:*
    P. Craig Silva, Williams, Porter, Day and Neville, P.C., Casper, Wyoming.

*Representing Appellee, Wyoming Workers' Safety and Compensation Division:*
    No appearance.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]   Appellant, Circle C Resources, Inc. ("Circle C"), challenges a decision from the Office of Administrative Hearings awarding worker's compensation benefits to Appellee, Tara Kobielusz.   Circle C contends the hearing examiner erred in finding that Ms. Kobielusz was Circle C's employee, rather than an independent contractor.   We affirm.

### ISSUE

[¶2]   Was the hearing examiner's determination that Ms. Kobielusz was not an independent contractor as defined by Wyo. Stat. Ann. § 27-14-102 (a)(xxiii) supported by substantial evidence?[1]

### FACTS

[¶3]   Circle C Resources provides living assistance services for persons with developmental disabilities.   The business is co-owned by Joyce Rainbolt, who serves as Circle C's Chief Financial Officer, and Patricia Kolarik, who serves as its Director. Ms. Kobielusz began working for Circle C as a "day habilitation" provider in February, 2005.   Soon after beginning her employment, Ms. Kobielusz began providing case management services for Circle C's clients.   As a case manager, Ms. Kobielusz helped create the clients' individual care plans and visited the clients in their homes on a monthly basis.   In July, 2010, Ms. Kobielusz began working for Circle C as a "host family provider" (HFP), and she continued in that role until January, 2011, when Circle C terminated her employment.

[¶4]   In December, 2010, as Ms. Kobielusz was entering Circle C's office to pick up Circle C's clients from their day habilitation program, she fell and broke her ankle.   The Division issued a final determination on February 1, 2011, finding that Ms. Kobielusz had experienced a compensable injury.   Circle C objected to the Division's final determination and requested a contested case hearing before the Office of Administrative Hearings (OAH).   At the hearing, Circle C objected to the Division's final determination on the grounds that Ms. Kobielusz was not an employee, but rather an independent contractor.   Circle C also questioned whether Ms. Kobielusz had incurred her injury in the manner she claimed.[2]

---

[1] Circle C also contends that the hearing examiner misapplied the law in determining that Ms. Kobielusz was not an independent contractor.  We address that question in our resolution of the substantial evidence issue.

[2] In this appeal, Circle C does not challenge the hearing examiner's findings regarding the manner and

[¶5]   Following the hearing, the OAH issued an order upholding the Division's final determination.  The OAH concluded that Ms. Kobielusz was an employee of Circle C while providing host family services, and that she had experienced a compensable injury.  Circle C challenged the OAH's decision in district court, and the district court affirmed.[3]  This timely appeal followed.

## *STANDARD OF REVIEW*

[¶6]   When we consider an appeal from a district court's review of an administrative agency's decision, we review the case as though it had come directly from the administrative agency.  *Guier v. Teton County Hosp. Dist.*, 2011 WY 31, ¶ 12, 248 P.3d 623, 629 (Wyo. 2011).  Whether a worker is an employee or an independent contractor is generally a question of fact:

> There is ample law that says the jury or other fact finder determines a disputed issue of whether a party is an employee or an independent contractor. 41 Am. Jur. 2d *Independent Contractors* § 69 (2005 and 2009 Cum. Supp.). It is only when the evidence is susceptible to but a single inference that the Court rules as a matter of law. *Id.*

*Singer v. New Tech Eng'g L.P.*, 2010 WY 31, ¶ 10, 227 P.3d 305, 310 (Wyo. 2010).  We review an administrative agency's findings of fact pursuant to the substantial evidence test.  *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008).  Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.  *Id.*, ¶ 11, 188 P.3d at 558.  Findings of fact are supported by substantial evidence if, from the evidence in the record, this Court can discern a rational premise for the agency's findings.  *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 11, 259 P.3d 1161, 1164 (Wyo. 2011).  When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions.  *Dale*, ¶ 22, 188 P.3d at 561. We review an agency's conclusions of law *de novo*.  *Id.*, ¶ 26, 188 P.3d at 561.

---

extent of injury.

[3] The Division filed a notice of non-participation in the appeal, stating that it "does not believe that there is a sufficient legal issue that would require further briefing."

## DISCUSSION

[¶7]    The Wyoming Worker's Compensation Act extends benefits only to employees. Wyo. Stat. Ann. § 27-14-104(a) (LexisNexis 2011).  The Act's definition of an employee excludes independent contractors. Wyo. Stat. Ann. § 27-14-102(a)(vii)(D).  The Act sets forth the following three-part test for determining whether an individual qualifies as an independent contractor:

> (xxiii) "Independent contractor" means an individual who performs services for another individual or entity and:
>
> (A) Is free from control or direction over the details of the performance of services by contract and by fact;
>
> (B) Repealed by Laws 1998, ch. 117, § 2.
>
> (C) Represents his services to the public as a self-employed individual or an independent contractor; and
>
> (D) May substitute another person to perform his services.

Wyo. Stat. Ann. § 27-14-102(a)(xxiii).  We have not previously had occasion to interpret this statute in determining whether an individual qualifies as an "independent contractor" under the meaning of the Worker's Compensation Act.  We have previously recognized, however, that when interpreting statutes, the word "and" is conjunctive. *Clark v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 968 P.2d 436, 438 (Wyo. 1998).  "Webster's recognizes that the word 'and' is 'used in logic as a sentential connective that forms a complex sentence which is true only if both constituent sentences are true.'" *Prickett v. Prickett*, 2007 WY 153, ¶ 11, 167 P.3d 661, 664 (Wyo. 2007) (emphasis omitted) (quoting Webster's New Collegiate Dictionary 43 (1977)).  Accordingly, Wyo. Stat. Ann. § 27-14-102(a)(xxiii) establishes a three-part test, each element of which must be satisfied in order for an individual to qualify as an independent contractor.

[¶8]    The first element relates to the degree of control exercised over the performance of services.  The Worker's Compensation Act does not define "control" as that term is used in Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(A).  The concept of control, however, has been addressed extensively at common law, which gives "overriding consideration" to "the employer's right to control the means and manner of the work" in determining whether a worker is an employee or an independent contractor.  *Diamond B Svcs., Inc. v. Rohde*, 2005 WY 130, ¶ 28, 120 P.3d 1031, 1041 (Wyo. 2005). This precedent is relevant in determining whether Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(A) is satisfied because "the employer's right to control the means and manner of the work" bears very close

3

resemblance to the statutory requirement of freedom from "control or direction over the details of the performance of services."

[¶9] Our precedent has explained the concept of control in the context of employer/employee relationships as follows:

> In examining the extent of the employer's control over the worker in this instance, it is important to distinguish control over the means and manner of the work from control over the end product of the work to be performed. *Diamond B Services, Inc. v. Rohde*, 2005 WY 130, ¶ 28, 120 P.3d 1031, 1041 (Wyo. 2005). An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used. *Id.*, ¶ 27, 120 P.3d at 1041. When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of how the work is performed.

*Singer*, ¶ 14, 227 P.3d at 311 (emphasis omitted). Further, regarding the difference between control of the "means and manner" of performance and the "result" of the work performed, we have stated:

> The employer may exercise a limited control over the work without rendering the contractor a mere servant or employee, as a relation of master and servant or employer and employee is not inferable from a reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative, so long as he does it in accordance with the contract. *The control of the work reserved in the employer which affects a master-servant relationship is control of the means and manner of performance of the work*, as well as of the result; an independent contractor relationship exists where the person doing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. . . . A requirement that the work be performed according to standards and specifications imposed by the owner is not sufficient to establish the degree of control necessary to make a presumably independent contractor the agent of the owner, *but the*

> *retention of the right not only to insure conformity with specifications, but also the retention or exercise of the right to direct the manner in or means by which the work shall be performed, will destroy the independent status of the contractor.*

> 41 AM. JUR. 2D *Independent Contractors* § 8 (1968) (emphasis added).

*Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1185 (Wyo. 1994).

[¶10] Circle C acknowledges that it exercised some degree of control over Ms. Kobielusz's services as a host family provider. Circle C claims, however, that its control over Ms. Kobielusz "was directed at the result of the work and not the methods or means used." It attempts to characterize all of the control exercised over the performance of Ms. Kobielusz's services as the result of state or federal regulation. According to Circle C, "so long as [the] ultimate outcome or goal of compliance with the plan of care and the Medicaid, [the Commission on Accreditation of Rehabilitation Facilities], and State rules were achieved, Circle C had no interest in how Ms. Kobielusz ran her business caring for the clients." We do not agree. There is ample evidence in the record to support the hearing examiner's conclusion that Circle C controlled the details of Ms. Kobielusz's performance of services beyond that required by state or federal regulation.

[¶11] As indicated by Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(A), our first area of inquiry focuses on the written agreements entered into by Circle C and Ms. Kobielusz. As we have previously noted, "Although the contract is not conclusive evidence of the status of the relationship between parties, it is a strong indication of the association intended." *Natural Gas Processing Co.*, 886 P.2d at 1184. During the time Ms. Kobielusz worked as an HFP, she entered into two Host Family Provider Agreements with Circle C. The two Agreements were virtually identical. The Agreements enumerated 32 separate responsibilities to be performed by Ms. Kobielusz. Among other responsibilities, Ms. Kobielusz was required to (1) provide 24-hour support and supervision for Circle C's clients, and to provide a "clean, comfortable environment including access to laundry facilities, clean linen and . . . private bedroom[s];" (2) provide three meals a day and reasonable between-meal snacks, "including preparation of special diets as dictated by a physician;" (3) comply with "identified medical needs" and provide transportation to all appointments and activities; (4) report immediately any medical issue to Circle C; (5) maintain twelve different categories of records relating to Circle C clients and her activities as an HFP; (6) check her mailbox at Circle C's office on a weekly basis; (7) attend mandatory HFP meetings and mandatory monthly HFP trainings; (8) make the host home available for inspection without notice; (9) participate in the development and implementation of individual care plans with a team of Circle C staff members, "follow

any changes made by the Team," and "utilize the Team process as a means of communication and advocacy;" (10) seek Circle C's approval for "any changes in the home environment," including extended visitations, sleeping arrangements, and additional occupants; and (11) abide by Circle C's Policy and Procedure Manual.

[¶12] Each of the Agreements identified Ms. Kobielusz as an "independent entity who will comply with all federal and state regulations concerning self-employment, worker's compensation insurance and unemployment." Both Agreements provided, however, that "Any party may terminate this agreement by giving the other party 60 days written notice of its intention to terminate this agreement with or without cause." Additionally, the second HFP Agreement, executed in October, 2010, contained the following provision: "THIS AGREEMENT DOES NOT, AND IS NOT INTENDED TO CREATE A CONTRACT OF EMPLOYMENT FOR ANY TERM. ALL EMPLOYMENT WITH THIS EMPLOYER IS AT WILL AND MAY BE TERMINATED AT ANY TIME FOR ANY REASON AND WITHOUT ANY CAUSE." Notably, we have previously held that "[T]he right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work . . . establish[es] the status of master and servant." *Coates v. Anderson*, 2004 WY 11, ¶ 8, 84 P.3d 953, 957 (Wyo. 2004).

[¶13] Additionally, our precedent indicates that the "method of payment" is a factor to be considered in evaluating the degree of control exercised over the performance of a worker's services.

> With regard to the "method of payment" criterion, an independent contractor usually determines the price of his services and bills for his services on a regular basis. *Noonan* [*v. Texaco, Inc.*], 713 P.2d [160,] 166 [(Wyo. 1986)], citing *Simpson v. Home Petroleum Corp.*, 770 F.2d 499, 501 [(5th Cir. Tex. 1985)]; *Combined Insurance* [*Co. v. Sinclair*], 584 P.2d [1034,] 1043 [(Wyo. 1978)]. On the other hand, when the employer determines the worker's rate of pay and takes deductions out of his paychecks for federal income taxes, Social Security, and Medicare then a master-servant relationship is indicated. *Id.* We have said that payment of workers' compensation and unemployment insurance premiums by an employer suggests that the worker is an employee rather than an independent contractor. *See In re: Claims of Naylor*, 723 P.2d 1237, 1240-41 (Wyo. 1986); *In re Reed*, 444 P.2d 329, 330 (Wyo. 1968). Similarly, when a worker is eligible to participate in benefit programs such as retirement or insurance plans, as a result of his association with the employer, it suggests a master-servant relationship

6

exists. *Combined Insurance*, 584 P.2d at 1043.

*Diamond B Svcs., Inc.*, ¶ 30, 120 P.3d at 1042. In the present case, Circle C did not withhold taxes from Ms. Kobielusz's paycheck. However, Circle C determined her rate of pay. The Host Family Provider Agreements specified that Circle C would determine Ms. Kobielusz's rate of pay based on the number of clients in the host home. According to the Agreements, "If the 2 person Host Home changes to a 1 person Host Home the difficulty of care payment may be adjusted accordingly, with the difficulty of care payment being the next lowest to the current difficulty of care payment." Ms. Rainbolt stated that the difficulty of care payment was a "set amount" that was determined by Circle C. Further, Ms. Kobielusz was required to keep track of her hours on time sheets, and any vacation time had to be approved by Circle C. She was permitted one weekend off per month and was subject to a decrease in pay for any time off beyond that weekend.

[¶14] The evidence introduced at the contested case hearing also indicates that Circle C exercised control over the details of Ms. Kobielusz's services in "fact." In its brief, Circle C notes that Ms. Kobielusz had control over meals and recreational activities, and asserts that she "had full control over her home and the way she cared for her clients." In reality, however, Circle C had a large role in determining the parameters of the care provided by Ms. Kobielusz. Each of Circle C's clients' individual care plans, including those applicable to the clients living with Ms. Kobielusz, was created by a "team" consisting of Circle C staff members, including Circle C's day habilitation providers and case managers. The care plans identified each of the clients' individual needs and included information relating to appropriate activities, medical histories, and rehabilitative goals. The care plans also established daily schedules that were designed to meet the needs of Circle C's clients. Further, Ms. Kobielusz stated that she had to receive permission from Circle C to take clients to special functions not indicated in the individual care plans. Ms. Rainbolt testified that Ms. Kobielusz's personnel file indicated that she had been reprimanded for failing to follow a client's plan of care.

[¶15] Circle C also notes that Ms. Kobielusz was required to furnish her own tools and equipment for fulfilling her responsibilities under the Host Family Provider Agreements. Circle C points out that, despite the fact that Circle C made vehicles available to its host family providers, Ms. Kobielusz used her car to transport Circle C's clients. Although Ms. Kobielusz chose to furnish her own vehicle to transport Circle C's clients, Circle C exercised a significant degree of control over the host home in which Ms. Kobielusz worked. Notably, Circle C leased the home in which Ms. Kobielusz and Circle C's clients lived. According to Ms. Rainbolt and Ms. Kolarik, Circle C had leased Ms. Kobielusz's host home for approximately 10 years prior to Ms. Kobielusz's occupation of the home. Circle C's lease specified that "The property may only be used by Circle C Resources," and that "the property shall be used only by Circle C [R]esources clients as their residence." Before Ms. Kobielusz moved into the home, Circle C's employees completed extensive renovations in the home that involved painting, floor

7

replacement, mold removal, and a remodel of the kitchen. Circle C supplied all appliances in the home, as well as some furnishings, and Circle C was ultimately responsible for paying utilities under the terms of its lease. Further, Ms. Rainbolt acknowledged that if either party terminated Ms. Kobielusz's services, she would have to move out of the residence. When Circle C terminated Ms. Kobielusz's services, she was required to vacate the host home and was not permitted to continue providing services for Circle C's clients. Taken together, the facts set forth above provide substantial evidence to support the conclusion that Ms. Kobielusz was not, by contract or by fact, free from control over the details of the performance of her services under Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(A).

[¶16] Because we find substantial evidence to support the hearing examiner's determination that Ms. Kobielusz was not "free from control or direction over the details of the performance of services," we need not determine whether substantial evidence supports the hearing examiner's findings with respect to the remaining elements set forth in Wyo. Stat. Ann. § 27-14-102(a)(xxiii). Nonetheless, we note that the evidence relating to the remaining elements also indicates that Ms. Kobielusz was not an independent contractor at the time of her injury. We will address each of those elements in turn.

[¶17] With respect to the second statutory element, relating to representation of services to the public, Circle C notes that Ms. Kobielusz "was actively performing work as an independent contractor in other capacities at the very same time she was performing services as a host family provider." Specifically, Circle C asserts that she was working as a case manager for individuals other than Circle C's clients. Circle C also notes that Ms. Kobielusz "independently ran a business renting rooms and providing board to the host family clients for whom she was providing host family services." According to Circle C, "Given these undisputed facts, it was completely unreasonable for the hearing examiner below to conclude that Ms. Kobielusz was not representing her services to the public as a self-employed individual." We do not agree.

[¶18] As conceded by Circle C, Ms. Kobielusz was performing work as an independent contractor *in other capacities* during the time she was providing services as a host family provider. However, Circle C fails to recognize our precedent stating that "The authorities, without any noticed dissent, hold that a person may be an independent contractor in some work and an employee in other work for the same employer . . . ." *Burnett v. Roberts*, 121 P.2d 896, 900 (Wyo. 1942). In this case, the fact that Ms. Kobielusz may have been an independent contractor in jobs other than host family provider has no bearing on the issue of whether she represented her services to the public as a host family provider. There is no evidence in the record that Ms. Kobielusz represented herself as able to provide host family services as an independent contractor. Ms. Kobielusz testified that she did not advertise herself as a host family provider. Ms. Kolarik corroborated this testimony when she stated that she was not aware of any advertisement of host family provider services by Ms. Kobielusz. We also note that this

fact is consistent with the existence of a Confidentiality and Noncompetition Agreement entered into by Ms. Kobielusz and Circle C. That Agreement identified the parties as "employer" and "employee" and stated that

> Employer has employed employee to devote his or her full time, attention, and energies to the business of employer and to use his or her best efforts, skill, and abilities in performing the specific duties of such employment, and employee shall not, without prior written consent of employer, either directly or indirectly, engage in any other occupation, profession, or business.

Under the Agreement, Ms. Kobielusz was prohibited from engaging or assisting any business that competed with Circle C in seven different counties for a period of 24 months, and was prohibited from soliciting or encouraging any clients "to use or engage services of any of employer's competitors who provide similar services in any geographic area in which employer markets or has marketed its services during the year preceding separation from employment." Ms. Rainbolt acknowledged that Ms. Kobielusz would have violated the Agreement by bringing her own clients into the host home. Further, Ms. Kolarik testified that Ms. Kobielusz was not providing host family services to any of Circle C's competitors in the area. Ms. Kolarik testified that Ms. Kobielusz "did not have an independent provider number [from the Wyoming Department of Health] for services and stuff. That was all done under us. So from that point of view she really couldn't market herself as [an] independent provider." Each of these facts indicates that Ms. Kobielusz did not represent her services to the public as a self-employed individual or an independent contractor to any meaningful end. The hearing examiner's determination that Ms. Kobielusz did not represent her services to the public as a self-employed individual or an independent contractor under Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(C) is supported by substantial evidence.

[¶19] We turn, then, to the third statutory element, relating to the worker's ability to "substitute another person to perform his services." We note that the statute does not provide any guidance as to whether the ability to substitute another individual must be personal to the worker. Our research reveals that this is not a commonly used element in determining whether a worker is an employee or an independent contractor. However, decisions from jurisdictions that consider this element indicate that the independent contractor must have the ability to select his or her substitute. *See Rustler Lodge v. Industrial Comm'n*, 562 P.2d 227, 228 (Utah 1977) ("An independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of the employer."); *Talley v. Bowen Constr. Co.*, 340 S.W.2d 701 (Mo. 1960); *Odle v. Charcoal Iron Co.*, 187 N.W. 243 (Mich. 1922). In the present case, the Host Family Provider Agreements stated that Circle C would arrange for a substitute if

Ms. Kobielusz was unable to render services due to illness or vacation. According to the Agreements, Ms. Kobielusz was "entitled to no more than one weekend per month off . . . with Circle C Resources providing backup staffing arrangements." Ms. Rainbolt confirmed that Ms. Kobielusz was not free to substitute another person of her choosing to perform host family provider services. Because Ms. Kobielusz did not have the ability to select a substitute to perform her services, we conclude that the evidence supports the hearing examiner's finding that Ms. Kobielusz was not "an individual who . . . [m]ay substitute another person to perform his services" under Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(D).

[¶20] Finally, Circle C contends the hearing examiner's decision was "not in accordance with the law" because the hearing examiner "resort[ed] to an analysis far beyond the factors in the statutory definition of independent contractor found in the Wyoming Worker's Compensation Act." Specifically, Circle C contends the hearing examiner erred in considering common law factors used to determine whether a person is an independent contractor, including the factors of whether Ms. Kobielusz was an "at will" employee, whether she provided her own "tools and equipment," and the nature of Circle C's "method of payment," none of which, according to Circle C, are properly considered under the statutory definition of an independent contractor. Circle C also contends the hearing examiner erred in relying on case law to elevate the importance of "control of performance of services" as compared to the two other statutory elements. We find no prejudice to Circle C in the hearing examiner's analysis.

[¶21] In contrast to the statutory test, the common law sets forth a multi-factor test, which weighs the relevant factors against one another. We have summarized that test as follows:

> The overriding consideration in distinguishing between master-servant relationships and employer-independent contractor relationships is the employer's right to control the means and manner of the work. *See, e.g., Stratman v. Admiral Beverage Corp.*, 760 P.2d 974, 980 (Wyo. 1988); *Cline v. State, Dep't. of Family Services*, 927 P.2d 261, 263 (Wyo. 1996); *Noonan v. Texaco, Inc.*, 713 P.2d 160, 164 (Wyo. 1986).
>
> > Such a right to control is a prerequisite of the master-servant relationship. Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship. Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily

> negatives the other, each depending on opposite answers to the same right of control inquiry.
>
> *Coates v. Anderson*, 2004 WY 11, ¶ 7, 84 P.3d 953, 957 (Wyo. 2004). When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of . . . how the work is performed. *Noonan*, 713 P.2d at 166; *Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1186 (Wyo. 1994).
>
> When an express contract exists between the parties, it is important evidence in defining the relationship, although it is not conclusive of the issue. *Coates*, ¶ 14; *Noonan*, 713 P.2d at 164. Other factors which are important to the determination include: the method of payment, the right to terminate the relationship without incurring liability, the furnishing of tools and equipment, the scope of the work, and the control of the premises where the work is to be done. *Stratman*, 760 P.2d at 980; *Combined Insurance*, 584 P.2d at 1043. Another factor to be considered is whether the worker devotes all of his efforts to the position or if he also performs work for others. *Id.*

*Diamond B Svcs.*, ¶¶ 28-29, 120 P.3d at 1041-42.

[¶22] As noted above, the first element of the statutory test, relating to "control or direction over the details of the performance of services," is very similar to "the employer's right to control the means and manner of the work." Accordingly, despite the differences in the common law and statutory tests for determining whether a worker is an employee or an independent contractor, we find that in the context of a worker's compensation claim, it is not inappropriate to consider the common law factors as they relate to "control or direction over the details of the performance of services." We note that there is nothing in Wyo. Stat. Ann. § 27-14-102(a)(xxiii) indicating that the statute precludes consideration of those factors. Each of the common law factors considered by the hearing examiner in this case, including the method of payment, the right to terminate the relationship without incurring liability, and the furnishing of tools and equipment, indicates a degree of "control or direction" over Ms. Kobielusz's services. Accordingly, each of these factors was relevant in determining whether Wyo. Stat. Ann. § 27-14-102(a)(xxiii)(A) was satisfied. Ultimately, because the evidence supports the hearing examiner's findings that none of the elements of Wyo. Stat. Ann. § 27-14-102(a)(xxiii) were satisfied in this case, we find no prejudice as a result of the hearing examiner's analysis.

11

[¶23]  Affirmed.