# THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 37

OCTOBER TERM, A.D. 2024

April 2, 2025

SUSAN ELSNER, Personal Representative of
the Estate of Margaret Wilkey, deceased,

Appellant
(Plaintiff),

v.

CAMPBELL COUNTY HOSPITAL
DISTRICT d/b/a THE LEGACY LIVING
AND REHABILITATION CENTER and
CAMPBELL COUNTY HOSPITAL
DISTRICT d/b/a CAMPBELL COUNTY
HEALTH,

Appellees
(Defendants).

CAMPBELL COUNTY HOSPITAL
DISTRICT d/b/a THE LEGACY LIVING
AND REHABILITATION CENTER and
CAMPBELL COUNTY HOSPITAL
DISTRICT d/b/a CAMPBELL COUNTY
HEALTH,

Appellants
(Defendants),

v.

SUSAN ELSNER, Personal Representative of
the Estate of Margaret Wilkey, deceased,

Appellee
(Plaintiff).

S-24-0180, S-24-0181

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

**Representing Susan Elsner:**

> *Diana Rhodes and Traci Rivinus of Rhodes Law Firm, LLC, Cheyenne, WY; Jerome M. Reinan and Jordana Gingrass of Law Offices of J.M. Reinan, PC, Denver, Colorado. Argument by Mr. Reinan.*

**Representing Campbell County Hospital District:**

> *Amy M. Iberlin of Williams, Porter, Day, and Neville, P.C., Casper, Wyoming. Argument by Ms. Iberlin.*

**Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.**

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    These cross-appeals stem from a complaint Susan Elsner filed against Campbell County Health, Campbell County Hospital District, and The Legacy Living and Rehabilitation Center (collectively "The Legacy") for injuries allegedly suffered by her mother, Margaret Wilkey, while a resident at The Legacy.  Ms. Elsner brought direct and vicarious negligence claims against The Legacy, asserting, among other things, it failed to protect Ms. Wilkey from being physically abused by a temporary certified nursing assistant (CNA) who was working at The Legacy.  The Legacy denied it was liable for any actions of the temporary CNA because she was an independent contractor.  After a six-day trial, the jury found the temporary CNA was an agent of The Legacy, and her negligence was a proximate cause of Ms. Wilkey's damages.  The jury further found The Legacy and its agents and employees had been negligent.  The jury apportioned fault between the temporary CNA and The Legacy.  Following the trial, the district court entered a judgment that reduced the amount of damages the jury awarded to Ms. Wilkey's estate by the percentage of fault the jury attributed to the temporary CNA.  Ms. Elsner appeals, arguing this reduction was contrary to Wyoming law and inconsistent with the jury's verdict.  The Legacy filed a cross-appeal asserting the district court should never have allowed the jury to consider whether the temporary CNA was an agent of The Legacy.  We affirm in part, reverse in part, and remand this case to the district court.

## ISSUES

[¶2]    The parties raise several issues which we consolidate and rephrase as follows:

> I.    Did the district court err when it denied The Legacy's renewed motion for judgment as a matter of law under Rule 50 of the Wyoming Rules of Civil Procedure (W.R.C.P.)?
>
> II.    Did the jury instructions and verdict form adequately instruct the jury on the proper principles of law that applied to this case, or did they cause the jury to reach a verdict that is contrary to Wyoming law?
>
> III.    Did the district court abuse its discretion when it denied The Legacy's motion in limine related to falls?
>
> IV.    Did the district court err when it reduced the damages?

## FACTS

[¶3]    The Legacy is a skilled nursing and rehabilitation facility owned by Campbell

County Hospital District. Campbell County Hospital District does business as Campbell County Health, and Campbell County Health manages The Legacy.

[¶4] When The Legacy needed additional temporary staff, it used a staffing agency, FocusOne Solutions, to recruit professionals who met the requirements set forth by The Legacy. Each of these temporary professionals were employed by a separate agency, and The Legacy's contract with FocusOne Solutions provided the professionals would be under the "direction and supervision" of The Legacy when rendering services. In early 2019, The Legacy contacted FocusOne Solutions to fill a temporary CNA vacancy. After reviewing the information provided by FocusOne Solutions, The Legacy selected Crystal Nelisse to fill this position, and it offered her a 13-week contract from March 6, 2019, through June 1, 2019. The Legacy extended Ms. Nelisse's contract for an additional 13 weeks beginning on June 1, 2019.

[¶5] Margaret Wilkey was a resident of The Legacy for six years. At the time of her admission, Ms. Wilkey had numerous health conditions including dementia, Alzheimer's, COPD, PTSD, vertigo, hypoxia, and poor safety awareness. She was completely dependent on The Legacy for 24-hour nursing care to meet her needs and provide for her safety.

[¶6] On July 1, 2019, Ms. Nelisse physically abused Ms. Wilkey. While HL, a CNA employed by The Legacy, was getting Ms. Wilkey ready for bed, Ms. Nelisse followed her into the room to provide assistance. They proceeded to change Ms. Wilkey's clothes. When Ms. Wilkey made eye contact with Ms. Nelisse, she became startled and attempted to punch her. Ms. Nelisse responded by grabbing Ms. Wilkey by the shoulders and slamming her down onto the bed while yelling at her something like: "We are not doing this again," or "Not tonight." Ms. Nelisse then began collecting dirty linens while HL continued to get Ms. Wilkey ready for bed. A few minutes later, Ms. Nelisse returned to Ms. Wilkey's bedside, and although Ms. Wilkey had done nothing to provoke any further action, Ms. Nelisse grabbed Ms. Wilkey's bedsheets, pulled them across her neck, pinned her to the bed, and choked her with the sheet while yelling: "We're not going to do this again." HL reported Ms. Nelisse's conduct to her supervisor, and Ms. Nelisse was suspended pending an investigation.

[¶7] A nurse examined Ms. Wilkey the following day and found bruising on Ms. Wilkey's arms and left hand that were consistent with being grabbed with force and physically abused. After The Legacy's internal investigation substantiated the abuse, the facility terminated Ms. Nelisse's contract and reported the abuse to the Gillette Police Department. When interviewed by the police, HL stated she saw Ms. Nelisse do something similar to Ms. Wilkey on June 28, 2019, and she told Ms. Nelisse this behavior was unacceptable. Other Legacy staff informed the police they were not surprised by what had happened to Ms. Wilkey because Ms. Nelisse typically had a very poor attitude and was

often rude or abrasive toward the residents. The State charged Ms. Nelisse with one count of felony abuse of a vulnerable adult, and she pled guilty to that charge.

[¶8] After Ms. Wilkey died due to complications from COPD in December 2020, Ms. Elsner was appointed as the personal representative of her estate. In June 2021, Ms. Elsner served The Legacy with a verified and certified notice of claim as required by the Wyoming Governmental Claims Act (WGCA), Wyoming Statutes §§ 1-39-101 et seq. (LexisNexis 2021). When describing the time, place, and circumstances of the loss and injury, the notice of claim stated:

> The incidents in question occurred during the residency of Margaret Wilkey during her residency at The Legacy Living and Rehabilitation Center (Legacy), specifically those incidents related to physical and emotional abuse of Margaret Wilkey during the time period approximately 6-12 months before and up to and including the final two instances of abuse that occurred on June 28, 2019, and July 2, 2019 [sic].

> This claim arises out of events that occurred at [The Legacy] where Claimant's mother, Margaret Wilkey, sustained injuries, not limited to but including bruises on her left outer elbow, left forearm, left second finger, right bicep and right wrist, physical pain, emotional suffering, and loss of dignity due to the acts and/or omissions of the Governmental Entity and/or its agents while acting within the scope of its, his, hers, or their duties in providing long-term skilled nursing care to Margaret Wilkey due to her inability to care for herself or to be safe in another environment outside the facility . . . . On or around June and early July, 2019, Ms. Wilkey suffered multiple instances of traumatic physical and emotional abuse by an employee of the Legacy. Other employees had witnessed the abuse and failed to report the abuse, causing the abuse to continue against Ms. Wilkey. Nurses were aware of the ongoing abuse and neglected to report this knowledge to those in authority. Those in positions of management authority, including the Board, the Administrator and the Director of Nursing, knew or should have known of this abuse, and specifically of an abusive employee, causing all residents in the care of The Legacy to be at risk and vulnerable to abuse, including Margaret Wilkey. Other nursing staff were aware of the abuse of the CNA who abused and traumatized Margaret Wilkey, and it was foreseeable that the CNA would continue to abuse residents. The negligence of Campbell County Hospital District, its

3

> Board of Trustees, [The Legacy], its Board of Directors, and its management and staff caused Margaret Wilkey to be assaulted and terrorized in what was the last days of her life, making her fearful and traumatized for the remainder of her life.

The notice of claim further alleged The Legacy failed to meet the standard of care and was negligent in numerous ways.

[¶9]   When The Legacy did not timely admit, reject, or pay the notice of claim, Ms. Elsner filed this suit.  She filed her original complaint against The Legacy and John Doe Corporation.  Her first cause of action asserted a claim of negligence against all the defendants.  She asserted The Legacy was negligent and failed to meet the standard of care in numerous ways.  Her second cause of action alleged The Legacy had negligently hired and/or retained Ms. Nelisse.  She asserted The Legacy had employed Ms. Nelisse by contract with John Doe Corporation for approximately six months during which time Ms. Wilkey had been injured.  She claimed The Legacy knew or should have known Ms. Nelisse exhibited verbal and physical abuse towards the residents, and it was negligent in either failing to properly screen Ms. Nelisse before hiring her or in retaining her.  Her third cause of action asserted a negligent hiring claim against John Doe Corporation.

[¶10]  In its answer, The Legacy admitted Ms. Nelisse was an agent or employee of the Legacy during the relevant period.  Approximately three months later, The Legacy filed a motion to amend its answer to correct what it characterized as a clerical error.  The Legacy asserted Ms. Nelisse was employed by Aureus Medical Group, and it needed to correct its position on her employment status.  The district court allowed The Legacy to amend its answer to state Ms. Nelisse was not an agent or employee of The Legacy.

[¶11]  After The Legacy amended its answer, Ms. Elsner moved to amend her complaint.  She asserted evidence learned through discovery allowed her to amend her claims of negligent hiring and retention to a claim of only negligent retention.  She also argued the contract between The Legacy and FocusOne Solutions made The Legacy responsible for the negligence of any temporary professionals furnished by FocusOne, and she could remove her claims against John Doe Corporation.  In addition, through discovery, Ms. Elsner learned Ms. Wilkey had suffered more than 50 falls during her residency at The Legacy, and she sought to add allegations about those falls to her complaint.  The district court granted Ms. Elsner's motion.

[¶12]  Approximately three months later, Ms. Elsner moved for partial summary judgment to establish as a matter of law that Ms. Nelisse was an agent of The Legacy.  She asserted Ms. Nelisse was an agent, not an independent contractor, because The Legacy exercised control over Ms. Nelisse, including the details of the work she performed, the assignment of residents for her care, scheduling her hours and days of work, furnishing the tools and

4

equipment she used, determining the scope of her work, controlling the premises where the work was performed, and precluding her from performing work for others while she was scheduled to work at The Legacy.

[¶13] The Legacy filed its own motion for partial summary judgment. It asserted Ms. Elsner could not bring a direct negligence claim against The Legacy when The Legacy was willing to admit vicarious liability for the actions of its employees. The Legacy also asserted Ms. Elsner could not bring a suit for negligent supervision or retention of Ms. Nelisse without suing Ms. Nelisse herself to establish the predicate negligence. Finally, The Legacy argued the WGCA precluded a governmental entity from being liable for Ms. Nelisse's conduct because she was an independent contractor.

[¶14] After holding a hearing, the district court denied both summary judgment motions. The district court found if Ms. Nelisse was indeed an independent contractor, The Legacy would enjoy immunity under the WGCA from any vicarious liability claims arising from her conduct. However, the district court found it could not determine, as a matter of law, if Ms. Nelisse was an independent contractor or an agent. The district court further found Wyoming law allowed a plaintiff to bring a direct negligence claim against the principal if the principal's actions were separate and independent from the agent's actions. Because the amended complaint encompassed more than the abuse that occurred on July 1, 2019, and alleged The Legacy was directly liable for its own actions or inactions that were not wholly dependent on the alleged negligence of its agents or employees, the district court found Ms. Elsner could proceed with both direct and vicarious liability claims.

[¶15] Approximately a month before trial was scheduled to begin, The Legacy filed a motion in limine to preclude Ms. Elsner from presenting any evidence related to the falls Ms. Wilkey suffered while at the facility. The Legacy claimed Ms. Elsner failed to designate any expert to testify the falls were caused by The Legacy's breach of the standard of care or to establish she suffered damages because of these falls. The Legacy submitted additional briefing in support of this motion, asserting Ms. Elsner's claims were barred because she did not reference the falls in her notice of claim, which was a condition precedent to filing suit under the WGCA, and many of the falls were outside the two-year statute of limitations. The district court denied this motion, finding The Legacy failed to timely raise the affirmative defense of the alleged deficiency of the notice of claim and that issue had been waived. The district court further found, although The Legacy had raised the affirmative defense of the statute of limitations in its answer, it never sought to dismiss the allegedly untimely claims by motion, it did not bring the matter before the court on summary judgment, and it raised the matter for the first time three weeks before trial was scheduled to commence. Therefore, The Legacy had waived the statute of limitations defense.

[¶16] The Legacy filed a motion asking the district court to reconsider its summary judgment ruling. It argued as a government entity, The Legacy could not be responsible

5

for the actions of an independent contractor. Further, even if Ms. Nelisse could be considered a public employee, The Legacy could not be responsible for her intentional conduct of abusing Ms. Wilkey. The district court denied this motion because Ms. Wilkey had alleged a series of negligent acts and omissions occurring over a period of time, and her claims were broader than the abuse that occurred on July 1, 2019. Consequently, Ms. Nelisse's employment status was still relevant, and the district court could not definitively resolve her employment status as a matter of law.

[¶17] The case proceeded to trial beginning on March 18, 2024. The jury heard testimony from other nurses and CNAs who worked at The Legacy that Ms. Nelisse was arrogant, difficult to work with, and rude to staff and residents. Some of these employees testified they believed management was aware of Ms. Nelisse's attitude, and everyone who worked with her knew she did not want to be there. Those in management who knew about Ms. Nelisse's rude behavior did not report it up the chain of command because they did not believe it constituted abuse.

[¶18] Multiple witnesses testified The Legacy controlled what unit, rooms, and patients Ms. Nelisse was assigned to, and she was expected to follow the facility's policies and procedures. Ms. Nelisse was supervised by nurses employed by The Legacy who were supposed to correct her if she was doing her job improperly and report her up the chain of command if necessary. Ms. Nelisse and all other temporary professionals were directed and supervised by employees of The Legacy, and they could be terminated, corrected, or disciplined by their Legacy supervisors.

[¶19] The evidence established Ms. Wilkey could be combative with The Legacy staff if she was not comfortable with them, she was particularly reactive to Ms. Nelisse, and Ms. Wilkey would immediately become upset and aggressive when she saw Ms. Nelisse. Ms. Wilkey's reaction to Ms. Nelisse was so concerning, it caused one medication aide, BC, to stand outside Ms. Wilkey's room whenever Ms. Nelisse was in there, just in case she needed to intervene. BC testified Ms. Nelisse should not have been assigned to care for Ms. Wilkey.

[¶20] Sometime before June 28, 2019, HL heard Ms. Nelisse yell at another resident saying something like she was not going to help that resident, or she did not have time to do what the resident asked her to do. Then on June 28, 2019, HL witnessed an incident between Ms. Wilkey and Ms. Nelisse. HL testified Ms. Nelisse started yelling and became verbally abusive to Ms. Wilkey while Ms. Wilkey was defenseless in a wheelchair. HL's testimony differed from what she originally told the police. HL initially said what happened on June 28, 2019, involved physical abuse and was similar to what happened on July 1, 2019. HL testified she should have reported what happened on June 28, 2019, to her supervisor, but she was called away to take care of another resident who had fallen and hurt her head.

6

[¶21]   The next incident HL witnessed occurred on July 1, 2019. HL testified Ms. Nelisse followed her into Ms. Wilkey's room on that day, saying Ms. Wilkey had been combative all week.  HL thought it was strange Ms. Nelisse was following her when she did not need any help with Ms. Wilkey.  HL got Ms. Wilkey into bed without Ms. Nelisse's help, and as they went to roll Ms. Wilkey on her side, Ms. Wilkey made eye contact with Ms. Nelisse and her attitude changed.  HL believed when Ms. Wilkey got angry and made a fist, she was attempting to communicate she had been getting hurt by Ms. Nelisse.  HL testified two incidents of abuse happened on July 1, 2019.  The first occurred when Ms. Nelisse shoved Ms. Wilkey down onto the bed, and the second happened when Ms. Nelisse returned to the bed and pinned Ms. Wilkey down with the sheet.  HL testified she should have made Ms. Nelisse leave the room after Ms. Nelisse shoved Ms. Wilkey down onto the bed, but she did not believe Ms. Nelisse would come back to the bed a few minutes later and commit a second act of abuse.  One of The Legacy's directors of nursing, TC, testified HL should have made Ms. Nelisse leave the room after the first incident on July 1, 2019, and had she done so, the second incident would never have occurred.  She opined allowing Ms. Nelisse to remain in the room violated The Legacy's abuse policy and was below the accepted standard of care.

[¶22]   At the close of Ms. Elsner's evidence, The Legacy moved for judgment as a matter of law pursuant to W.R.C.P. 50(a).  The Legacy asserted the undisputed facts established it did not negligently retain Ms. Nelisse.  The Legacy further argued under the WGCA, it could not be held vicariously liable for Ms. Nelisse's intentional conduct of abusing Ms. Wilkey on July 1, 2019, regardless of her employment status.  The Legacy also asserted the evidence did not support a direct negligence claim because there was no showing its training or supervision of its employees had been negligent.  Regarding the falls, The Legacy asserted Ms. Elsner had failed to establish the falls resulted in injury, or The Legacy's breach of the standard of care had led to those falls.

[¶23]   Ms. Elsner made her own W.R.C.P. 50(a) motion.  She asked the district court to rule as a matter of law Ms. Nelisse was an agent of The Legacy, not an independent contractor, because the evidence established The Legacy exercised supervision and control over every aspect of her work.

[¶24]   The district court granted The Legacy's W.R.C.P. 50 motion with respect to any vicarious liability arising from Ms. Nelisse's intentional and/or criminal conduct on July 1, 2019.  The district court denied The Legacy's motion in all other respects, and while it did not grant Ms. Elsner's motion, it found the jury would have a sufficient evidentiary basis to consider Ms. Nelisse to be an agent of The Legacy when acting in her duties as a CNA.

[¶25]   After The Legacy rested its case, Ms. Elsner renewed her W.R.C.P. 50 motion and asked the district court to rule as a matter of law Ms. Nelisse was an agent of The Legacy.

7

The Legacy likewise renewed its W.R.C.P. 50 motion and its motion in limine regarding the falls. The district court denied all these motions.

[¶26] Using a special verdict form, the jury found Ms. Nelisse was not an independent contractor, and she was an agent of The Legacy. The jury further found The Legacy, its agents, and employees were negligent, and this negligence was a proximate cause of Ms. Wilkey's injuries. The jury also found Ms. Nelisse was negligent, and her negligence was a proximate cause of Ms. Wilkey's damages. However, the jury found The Legacy did not negligently retain Ms. Nelisse. The jury apportioned 25% of the fault to The Legacy and 75% to Ms. Nelisse. It awarded damages to Ms. Wilkey's estate in the amount of $660,000.

[¶27] The parties were unable to agree on the form of the judgment following the trial, and they each submitted their own proposed order and briefing for the district court's consideration. The primary difference between the proposed judgments was that the one offered by The Legacy reduced the damages by the percentage of fault the jury attributed to Ms. Nelisse. Without holding a hearing or otherwise explaining its decision, the district court entered the judgment proposed by The Legacy, reducing the damages awarded to Ms. Wilkey's estate to $165,000. These appeals timely followed.

## DISCUSSION

[¶28] We will first address the issues raised in The Legacy's cross-appeal and then address the issue raised in Ms. Elsner's appeal.

### I. Did the district court err when it denied The Legacy's renewed motion for judgment as a matter of law?

[¶29] The Legacy asserts the district court erred when it denied the W.R.C.P. 50 motion with respect to Ms. Nelisse's employment status, the direct and vicarious liability claims, and the medical malpractice claim. The Legacy claims the denial of its Rule 50 motion resulted in the jury being improperly instructed.

[¶30] "A district court may grant a motion for judgment as a matter of law against a party under W.R.C.P. 50(a)(1) (LexisNexis 2023) 'if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cardenas v. Fossen*, 2024 WY 117, ¶ 12, 558 P.3d 943, 948 (Wyo. 2024) (quoting W.R.C.P. 50(a)(1)). "[A] motion under W.R.C.P. 50(a) 'deprives the parties of a determination of the facts by a jury,' and such a motion 'should be cautiously and sparingly granted.'" *Id.* (quoting *Cody v. Atkins*, 658 P.2d 59, 61 (Wyo. 1983)). We review the issue of whether The Legacy was entitled to judgment as a matter of law under W.R.C.P. 50 de novo. *Id.* at ¶ 13, 558 P.3d at 948 (citing *Wageman v. Harrell*, 2020 WY 143, ¶ 6, 476 P.3d 657, 659 (Wyo. 2020)). "[W]ithout weighing the credibility of witnesses or considering the weight of evidence[,]"

8

we review the entire record to determine if "there can be but one conclusion as to the verdict that reasonable persons could have reached." *Id.* (quoting *Wageman*, ¶ 6, 476 P.3d at 659). "We view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that may be drawn from the evidence." *Id.* If more than one reasonable inference may be drawn from the evidence, a motion for judgment as a matter of law must be denied. *Id.*

## A. Negligent Retention and Loss of Dignity Damages

[¶31] The Legacy asserts the district court should have granted its W.R.C.P. 50 motion on Ms. Elsner's negligent retention claim and its argument Ms. Wilkey's estate was not entitled to damages for "loss of dignity." However, the jury found The Legacy did not negligently retain Ms. Nelisse, and the district court ruled during the pretrial conference and jury instruction conference that loss of dignity was a subset of pain and suffering and not a separate category of damages. A case is moot when the determination of an issue will have no practical effect on the existing controversy. *Powder River Basin Res. Council v. Wyo. Dep't of Env't Quality*, 2020 WY 127, ¶ 10, 473 P.3d 294, 297 (Wyo. 2020) ("When no controversy exists, courts will not consume their time dealing with moot questions."). These issues are moot, and we will not address these arguments any further.

## B. Negligence

[¶32] Count I of the amended complaint alleged three types of negligence against The Legacy: 1) vicarious liability for Ms. Nelisse's actions; 2) vicarious liability for the actions of other Legacy employees who either did not report previous incidents involving Ms. Nelisse or negligently responded to her abusive behavior; and 3) direct negligence for The Legacy's breach of numerous duties including failing to implement policies and procedures to protect residents from abuse, failing to screen employees, failing to meet reporting requirements, failing to provide sufficient, competent staff, failing to adequately train staff, and failing to properly supervise staff. The Legacy moved for judgment as a matter of law on all aspects of this claim. On appeal, The Legacy argues the district court should have granted that motion.

### 1) Vicarious Liability

[¶33] The Legacy asserts the district court should have granted its Rule 50 motion related to the vicarious liability claim because The Legacy is a governmental entity, and the WGCA does not contain an exception for the intentional abuse committed by Ms. Nelisse on July 1, 2019. The parties do not dispute The Legacy is a governmental entity or that Ms. Elsner's claims are subject to the provisions of the WGCA. The WGCA is a "close-ended" claims act, meaning "a claim is barred unless it falls within one of the statutory exceptions." *Mem'l Hosp. of Sweetwater Cnty. v. Menapace*, 2017 WY 131, ¶ 14, 404 P.3d 1179, 1183 (Wyo. 2017) (quoting *Campbell County Mem'l Hosp. v. Pfeifle*, 2014 WY 3,

9

¶ 20, 317 P.3d 573, 579 (Wyo. 2014)). Sections 105 through 112 of the WGCA define a governmental entity's liability by creating exceptions to governmental immunity. *Id.* at ¶ 15, 404 P.3d at 1183. The WGCA contains an exception for damages resulting from bodily injury, wrongful death, or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of a public hospital or outpatient health care. Wyo. Stat. Ann. § 1-39-109(a). It also contains an exception for damages resulting from bodily injury, wrongful death, or property damage caused by the medical malpractice of health care providers who are employees of the governmental entity. Wyo. Stat. Ann. § 1-39-110(a). The only exception for intentional conduct set forth in the WGCA is for the "tortious conduct of peace officers while acting within the scope of their duties." Wyo. Stat. Ann. § 1-39-112.

[¶34] While we agree with The Legacy the WGCA does not contain an exception for the intentional abuse committed by Ms. Nelisse, we nonetheless find the district court properly denied The Legacy's Rule 50 motion. First, the jury heard evidence that would support a reasonable inference other Legacy employees were negligent. Second, Ms. Elsner's allegations against Ms. Nelisse encompassed more than the intentional acts of abuse committed on July 1, 2019.

### a. Evidence of Negligence by Other Legacy Employees

[¶35] The jury heard evidence that supported a reasonable inference HL was negligent when she 1) failed to report the incident on June 28, 2019, and 2) failed to make Ms. Nelisse leave the room after the first incident on July 1, 2019. In addition, the jury heard one of the charge nurses who supervised the CNAs, JT, was aware of the complaints about Ms. Nelisse's rude behavior but did not report it up the chain of command. The jury also heard Ms. Elsner and her brother, John Wilkey, both reported to Legacy staff before July 1, 2019, that Ms. Wilkey told them someone was coming into her room at night and hurting her. However, these complaints were not relayed to management or investigated. Further, the jury heard Legacy staff were not properly supervising Ms. Wilkey, struggled to promptly respond to call lights, and were leaving Ms. Wilkey on the toilet for excessive periods of time, all of which contributed to the number of falls she experienced at the facility.

[¶36] When viewing this evidence in a light most favorable to Ms. Elsner, a reasonable jury would have a legally sufficient evidentiary basis to find these other Legacy employees were negligent. Therefore, the district court correctly denied The Legacy's Rule 50 motion as it pertained to vicarious liability for these employees' negligence. *See Cardenas*, 2024 WY 117, ¶ 12, 558 P.3d at 948.

### b. Evidence of Ms. Nelisse's Negligence

[¶37] The Legacy has consistently focused on the abuse that was perpetrated on July 1, 2019, and it has asserted the WGCA precludes The Legacy from being liable for Ms.

10

Nelisse's felonious conduct regardless of her employment status. The Legacy fails to acknowledge Ms. Elsner's suit encompassed more than just the events of July 1, 2019. As evidenced by her notice of claim, her complaint involved events that occurred in the 6–12 months before July 1, 2019, including those that occurred on June 28, 2019. As the district court acknowledged, HL's testimony about what occurred on June 28, 2019, was "very murky" and would have permitted the jury to draw the reasonable inference that what happened on that day was negligent, not intentional. HL testified Ms. Nelisse committed an act of verbal abuse against Ms. Wilkey on June 28, 2019, by yelling at her while she was in a wheelchair. However, HL initially told police that what happened on June 28, 2019, was similar to what happened on July 1, 2019. Because the evidence would have allowed the jury to conclude whatever Ms. Nelisse did on June 28, 2019, was negligent, not intentional, the district court properly denied The Legacy's Rule 50 motion relating to Ms. Nelisse's negligence.

### 2) Direct Liability

[¶38] The Legacy argues the district court should have granted its Rule 50 motion relating to the direct negligence claim, including any claims for negligent training, negligent supervision, and medical malpractice.

[¶39] Ms. Elsner's amended complaint asserted both direct and vicarious liability claims against The Legacy. Direct liability is "liability for breach of one's own duty of care." *Vargas v. Inland Washington, LLC*, 452 P.3d 1205, 1212 (Wash. 2019) (quoting 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 4:1, at 178-79 (4th ed. 2013)). This concept becomes slightly more complicated when the defendant accused of direct negligence is a corporation. "[P]rivate corporations may commit almost every kind of a tort and be held liable, and this liability may be enforced in the same manner as if the wrong had been committed by an individual." 18B Am. Jur. 2d *Corporations* § 1811 (January 2025 Update). Although a corporation cannot act on its own, it can be held liable for conduct that has been institutionalized. *Id.* This "corporate negligence" is "the failure of the officers or directors who constitute the governing board of a corporation, acting as a board, to maintain the standard of conduct required of the particular corporation rather than the personal negligence of the corporation's ordinary employees." 18B Am. Jur. 2d *Corporations* § 1814 (January 2025 Update). Ms. Elsner's complaint contained allegations of direct, corporate negligence because she alleged The Legacy failed to implement certain policies and failed to properly train and supervise its employees.

[¶40] Although the direct negligence claim did not appear as a separate interrogatory on the special verdict form, it was included in Interrogatory No. 3 which asked the jury to determine if "the Legacy, its employees or its agents, [were] negligent by failing to meet the accepted standard of care in their care and treatment of Margaret Wilkey[.]" The district court correctly denied The Legacy's Rule 50 motion pertaining to the direct liability claim.

11

### a. Negligent Training

[¶41]   When The Legacy made its Rule 50 motion on this claim, it asserted the undisputed evidence showed its employees and temporary professionals had been given training regarding abuse, neglect, and exploitation of residents, and there was no evidence the scope of that training was somehow deficient.  Ms. Elsner asserts her allegation of negligent training was based on "multiple failures of Legacy management, including staff not reporting incidents of abuse or possible abuse, and staff not performing proper assessments related to falls, prevention of falls, and proper care planning to prevent falls."  She asserts the negligence of Legacy staff occurred as the result of either a lack of training or ineffective training.

[¶42]   The undisputed evidence showed The Legacy had policies in place prohibiting abuse and neglect of its residents, and staff received training regarding these policies.  However, Ms. Elsner's experts testified for this training to be effective, a facility must also give the staff guidance on what constitutes abuse, how to report that abuse, and what to do for the resident after abuse has occurred.  Some Legacy employees testified they did not report their concerns about Ms. Nelisse's behavior before July 1, 2019, because they either were unsure if it was reportable or believed it did not constitute abuse.  In addition, some Legacy employees presented conflicting testimony about the timeframes for reporting abuse set forth in the policy, and there was evidence in the record that suggested The Legacy did not strictly comply with those timeframes after the incident on July 1, 2019.  Further, although the policy required all suspected abuse to be reported and investigated, Ms. Elsner's and Mr. Wilkey's statements regarding suspected abuse prior to July 1, 2019, were not reported up the chain of command or investigated.  When viewed in a light most favorable to Ms. Elsner, a rational jury would have a legally sufficient basis to conclude the scope of the training provided by The Legacy was deficient.  A jury could reasonably conclude Legacy employees could not properly identify suspected abuse or were unsure what needed to be reported or how those reports should be made.  Therefore, the district court properly denied The Legacy's Rule 50 motion on this claim.

### b. Negligent Supervision

[¶43]   When The Legacy made its Rule 50 motion on the negligent supervision claim, it cited to Wyoming Civil Pattern Jury Instruction (W.C.P.J.I.) 3.13 which states:

> An employer [or] master is under a duty to exercise reasonable care so as to control his employee [or] servant while the employee [or] servant is acting outside the scope of his employment as to prevent the employee [or] servant from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

12

a. the employee [or] servant
   i. is upon the premises in possession of the employer [or] master or upon which the employee [or] servant is privileged to enter only as his employee [or] servant, or
   ii. is using a chattel of the employer [or] master, and
b. the employer [or] master
   i. knows or has reason to know that the employer [or] master has the ability to control the employee [or] servant, and
   ii. knows or should know of the necessity and opportunity for exercising such control.

[¶44]  The Legacy asserted Ms. Elsner failed to present any evidence to satisfy the "fourth element" by showing The Legacy knew or should have known prior to July 1, 2019, of the necessity and opportunity to exercise control over Ms. Nelisse.  Without this evidence, The Legacy asserted the jury did not have a legally sufficient basis to find The Legacy had a duty to exercise control over Ms. Nelisse to prevent her from acting outside the scope of her duties as a CNA by intentionally harming Ms. Wilkey.  Ms. Elsner asserts she presented evidence The Legacy knew or should have known Ms. Nelisse's conduct was negligent or abusive as early as mid-June 2019.  She asserts if HL had properly reported the incident she witnessed on June 28, 2019, or if any of the other Legacy staff properly reported their concerns regarding Ms. Nelisse, she would not have been retained, and the abuse of Ms. Wilkey on July 1, 2019, would not have occurred.

[¶45]  As discussed above, the evidence at trial showed multiple employees had concerns about Ms. Nelisse that they did not report up the chain of command.  HL testified she should have reported what occurred on June 28, 2019.  If these staff members had properly reported Ms. Nelisse's inappropriate conduct, The Legacy could have reassigned Ms. Nelisse to another unit, implemented additional training or supervision, or terminated her contract, all of which could have prevented injury to Ms. Wilkey.  In addition, Ms. Elsner's expert opined a facility should supervise temporary staff for longer periods of time than direct employees to minimize the risk of using those professionals whose personalities and backgrounds are not well known to the facility.  However, The Legacy had a policy of only having temporary professionals "shadow" an experienced employee for a total of two shifts to get oriented with the unit.  Had Ms. Nelisse shadowed a supervisor longer, that person may have had an opportunity to observe her inappropriate behavior and take corrective action.

[¶46]  When viewing this evidence in a light most favorable to Ms. Elsner, a reasonable jury would have a sufficient evidentiary basis to conclude The Legacy should have known about Ms. Nelisse's negligent or abusive conduct prior to July 1, 2019, and of the necessity

13

and opportunity to exercise control over Ms. Nelisse to prevent her from harming Ms. Wilkey. The district court properly denied The Legacy's Rule 50 motion on this claim.

### c. Malpractice

[¶47]  The Legacy asserts the district court should have granted its Rule 50 motion on Ms. Elsner's "malpractice" claim. The Legacy asserts Ms. Elsner needed to meet the elements of a malpractice claim for each of the 50+ falls Ms. Wilkey suffered at the facility, and she failed to do so because she did not establish which of those falls resulted in injuries.

[¶48]  Throughout this case, the parties have had a fundamental disagreement over whether Ms. Elsner's claim regarding the falls suffered by Ms. Wilkey was a medical malpractice claim or an ordinary negligence claim. Ms. Elsner asserts she never pled a malpractice claim. Instead, she argues she pled a negligence case arising from multiple events, i.e. multiple falls, which occurred over a long period of time, that demonstrate The Legacy had a pattern and practice of not having enough staff to meet the needs of its residents, and it left the residents without adequate direction and supervision.

[¶49]  The district court concluded this was a "distinction without a difference." The district court ultimately crafted a jury instruction for this claim that was based on the medical malpractice pattern instruction. Ms. Elsner was required to prove: 1) the standard of care for a nursing home; 2) The Legacy breached that standard of care; 3) that breach was a cause of Ms. Wilkey's injuries; and 4) the nature and extent of those injuries.

[¶50]  Whether couched in terms of malpractice or ordinary negligence, at the time The Legacy made its Rule 50 motion, the jury had heard the rules and regulations that govern nursing homes require facilities to take steps to prevent residents from falling. When a fall does occur, a facility must investigate the root cause of the fall and put interventions in place to try to prevent another fall from occurring. One of Ms. Elsner's experts opined supervision of the patient was key to preventing falls. Yet, the evidence suggested Ms. Wilkey was not being properly supervised; 20 of her falls occurred in the bathroom and 11 were falls out of bed. Ms. Elsner's experts opined The Legacy did not make progressive attempts to prevent these falls. The evidence also established Ms. Wilkey sustained injuries because of some of these falls.

[¶51]  When viewed in a light most favorable to Ms. Elsner, a reasonable jury would have had a sufficient evidentiary basis to conclude The Legacy breached the standard of care that applies to a nursing home, this breach was a cause of Ms. Wilkey's numerous falls, and Ms. Wilkey was injured because of these falls. Therefore, the district court properly denied The Legacy's Rule 50 motion on this claim.

[¶52]  After reviewing the evidence set forth above, we find the district court did not err when it denied The Legacy's renewed motion for judgment as a matter of law. A

14

reasonable jury would have had a sufficient evidentiary basis to find in Ms. Elsner's favor on her direct and vicarious liability claims. Because there could be more than one conclusion as to the verdict reasonable persons could have reached based on this evidence, the district court properly denied The Legacy's motion. *Cardenas*, 2024 WY 117, ¶ 12, 558 P.3d at 948 (quoting *Wageman*, 2020 WY 143, ¶ 6, 476 P.3d at 659).

## II. Did the jury instructions and verdict form adequately instruct the jury on the proper principles of law that apply to this case, or did they cause the jury to reach a verdict that is contrary to Wyoming law?

[¶53] The Legacy asserts the district court should not have allowed the jury to determine whether Ms. Nelisse was an agent or an independent contractor. The Legacy also asserts the district court should not have allowed Ms. Elsner to proceed with both direct and vicarious liability claims, and it should have bifurcated the proceedings on the negligent retention claim. It asserts the instructions given by the district court caused confusion and misled the jury, resulting in a verdict form that misstates Wyoming law, leading the jury to incorrectly find in favor of Ms. Elsner.

[¶54] Our standard of review for jury instructions is well known:

> When examining the propriety of jury instructions, this Court reviews whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law. The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case. The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law. The burden is on the appellant to show prejudicial error.

*Hannifan v. Am. Nat'l Bank of Cheyenne*, 2008 WY 65, ¶ 23, 185 P.3d 679, 689 (Wyo. 2008) (quoting *Parrish v. Groathouse Const., Inc.,* 2006 WY 33, ¶ 7, 130 P.3d 502, 505 (Wyo. 2006)) (internal citations omitted). "To measure the degree of prejudice, jury instructions are viewed in the light of the entire trial, including the allegations of the complaint, conflict in the evidence on critical issues and the arguments of counsel." *Frost v. Allred*, 2006 WY 155, ¶ 6, 148 P.3d 17, 19 (Wyo. 2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 832 (Wyo. 1994)).

### A. Ms. Nelisse's Employment Status

[¶55] The Legacy asserts the jury should not have been allowed to determine Ms. Nelisse's employment status because the undisputed evidence showed she was an employee of another entity and not a public employee as defined by the WGCA. The Legacy also asserts if Ms. Nelisse could be considered its "agent," then under established case law relating to ostensible and apparent agents, it could not be liable for her actions. The Legacy asserts the jury should not have been given instructions on the definition of agent, the scope of an agent's authority, or the definition of an independent contractor.

### 1) *Apparent and Ostensible Agents*

[¶56] We have previously held the WGCA does not include a waiver of governmental immunity for apparent or ostensible agents of a governmental entity. *Menapace*, 2017 WY 131, ¶ 11, 404 P.3d at 1182; *Pfeifle*, 2014 WY 3, ¶ 29, 317 P.3d at 580. However, those cases did not address a government entity's liability for the acts of its actual agents. An "apparent agent" is "[s]omeone who reasonably appears to have authority to act for another, regardless of whether actual authority has been conferred. — Also termed *ostensible agent*; *implied agent.*" AGENT, Black's Law Dictionary (12th ed. 2024).

[¶57] In contrast, an agent is "a person who is authorized by another, called the principal, to act on behalf of the principal and who is subject to the control and consent of the principal, with or without compensation." W.C.P.J.I. 8.02 (citing Restatement (Second) of Agency § 1 (1957)). "Whether an agency relationship exists and the scope of the agent's authority are questions of fact." *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 33, 508 P.3d 696, 708 (Wyo. 2022) (citing *Hamilton v. Natrona Cnty. Educ. Ass'n*, 901 P.2d 381, 386 (Wyo. 1995)).

[¶58] The district court correctly found there were no assertions Ms. Nelisse was an ostensible or apparent agent of The Legacy. Ms. Elsner asserted Ms. Nelisse was an agent of The Legacy. She asserted The Legacy had consented to Ms. Nelisse being in its facility, provided her tools to do her work, and she was subject to its direction and control. Our holdings in *Pfeifle* and *Menapace* only apply to apparent and ostensible agents. *Menapace*, 2017 WY 131, ¶ 11, 404 P.3d at 1182; *Pfeifle*, 2014 WY 3, ¶ 29, 317 P.3d at 580.

[¶59] With limited exceptions that do not apply to this case, independent contractors are not public employees under the WGCA. Wyo. Stat. Ann. § 1-39-103(a)(iv)(B), (C), (F). (LexisNexis 2023). While Ms. Nelisse may have technically been employed by Aureus Medical Group, whether she was truly an independent contractor or an agent of The Legacy was a question of fact for the jury. *Peterson*, ¶ 33, 508 P.3d at 708 (citing *Hamilton*, 901 P.2d at 386. Therefore, the district court did not err when it found the jury needed to determine the factual questions surrounding Ms. Nelisse's employment status.

### 2) *Agent vs. Servant*

[¶60]   In the complaint and amended complaint, Ms. Elsner alleged The Legacy was liable for the acts of its officers, agents, employees, and servants as defined by the WGCA.  Yet, in their summary judgment motions, both parties asked the district court to determine whether Ms. Nelisse was an agent rather than a servant.  The Legacy now asserts the district court should not have instructed the jury on principles of law applicable to agents.

[¶61]   The WGCA defines a "public employee" as "any officer, employee or servant of a governmental entity, including elected or appointed officials, peace officers and persons acting on behalf of or in service of a governmental entity in any official capacity, whether with or without compensation[.]" Wyo. Stat. Ann. § 1-39-103(a)(iv)(A) (LexisNexis 2023).  Although the word "agent" does not appear in the WGCA's definition of public employee, Ms. Elsner asserts Wyoming law uses the words employee, agent, and servant interchangeably, and they all have the same or similar meanings.  Therefore, she argues the WGCA includes an agent within the definition of public employee by using the word servant.

[¶62]   During the jury instruction conference, the district court stated its position "servant" under Wyoming Statute § 1-39-103(iv)(A) was synonymous with "agent."  This discussion shows the district court was attempting to fashion jury instructions that allowed the jury to make the relevant determination: whether Ms. Nelisse was an independent contractor or a "public employee" under the WGCA. For this instruction to be prejudicial, The Legacy must show instructing the jury on standards relating to agents rather than servants confused or misled the jury with respect to the proper principles of law. *See Hannifan*, 2008 WY 65, ¶ 23, 185 P.3d at 689 (quoting *Parrish,* 2006 WY 33, ¶ 7, 130 P.3d at 505).

[¶63]   As discussed above, an agent is "a person who is authorized by another, called the principal, to act on behalf of the principal and who is subject to the control and consent of the principal, with or without compensation." W.C.P.J.I. 8.02 (citing Restatement (Second) of Agency § 1 (1957)).  A servant is "[s]omeone who is employed by another to do work under the control and direction of the employer." SERVANT, Black's Law Dictionary (12th ed. 2024); *see also* Restatement (Second) of Agency § 220 (1958) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.").

[¶64] "The overriding consideration in distinguishing between master-servant relationships and employer-independent contractor relationships is the employer's right to control the means and manner of the work." *In re Kobielusz*, 2014 WY 35, ¶ 21, 320 P.3d 213, 221 (Wyo. 2014).

> Such a right to control is a prerequisite of the master-servant relationship. Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship.

17

Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily negatives the other, each depending on opposite answers to the same right of control inquiry.

*Id.* (quoting *Coates v. Anderson,* 2004 WY 11, ¶ 7, 84 P.3d 953, 957 (Wyo. 2004)). "When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of how the work is performed." *Id.* (citing *Noonan v. Texaco, Inc.,* 713 P.2d 160, 166 (Wyo. 1986); *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1186 (Wyo.1994)).

[¶65]  In this case, the jury was given the following instruction regarding the definition of an independent contractor:

### INSTRUCTION NO. 13

An "independent contractor" is one who contracts to do work according to her own methods, means, and manner of doing the work and without being subject to the control, direction, or supervision of her principal, except as to the result of the work.

The jury was also instructed on the definition of agent set out above.  Thus, although the instructions did not use the word servant, the jury was correctly charged with determining whether The Legacy controlled the direction, methods, means, and manner of Ms. Nelisse's work. *See In re Kobielusz,* ¶ 21, 320 P.3d at 221 (quoting *Coates,* 2004 WY 11, ¶ 7, 84 P.3d at 957).

[¶66]  Another important principle of law that applies to this case is: "A master is subject to liability for physical harm caused by the negligent conduct of servants within the scope of employment."[1] Restatement (Second) of Agency § 243 (1958); *Blessing v. Pittman*, 251

---

[1] Although most vicarious liability cases involve determining whether a servant or employee's actions were within the scope of his or her employment, the WGCA uses the phrase "scope of duties." *See, e.g.,* Wyo. Stat. Ann. § 1-39-109.  The WGCA defines "scope of duties" as "any duties which a governmental entity requests, requires, or authorizes a public employee to perform regardless of the time and place of performance." Wyo. Stat. Ann. § 1-39-103(a)(v).  In *Milton v. Mitchell*, we stated there was "an obvious and marked difference between the criteria that are invoked to determine whether an employee is acting within the 'scope of [her] employment' and those matters that are described in the statutory definition of 'scope of duties.'" 762 P.3d 372, 377 (Wyo. 1988).  We found the legislature did not intend those two phrases to have the same meaning. *Id.*  However, in *Krenning v. Heart Mountain Irrigation District*, we recognized a plaintiff who alleged a defendant was acting within the scope of his employment was also alleging those actions fell within the scope of his duties under the WGCA. 2009 WY 11, ¶¶ 28–32, 200

P.2d 243, 246 (Wyo. 1952) (citing *Stockwell v. Morris*, 22 P.2d 189[, 190–91] (Wyo. 1933) ("As a matter of public policy and economic requirements a master is liable for damages caused by the negligence of his servant within the scope of the latter's employment."). A servant's conduct is within the scope of his employment "if it is of the kind which [s]he is employed to perform, occurs substantially within the authorized limit of time and space, and it is actuated, [a]t least in part, by a purpose to serve the master." *Combined Ins. Co. of Am. v. Sinclair*, 584 P.2d 1034, 1041 (Wyo. 1978) (quoting Prosser, *Law of Torts* [§ 70], 461 (4th Ed. 1971)).

[¶67]  The jury received the following instructions regarding whether an act falls within the scope of an agent/servant's agency[2] or employment:

### INSTRUCTION NO. 11

An agent has express authority when the principal, orally or in writing, specifically grants the agent the power to act on behalf of the principal.

### INSTRUCTION NO. 12

An agent is acting within the scope of authority if the agent is doing that which is within the agent's express authority. The principal is legally responsible for the negligence of an agent acting within the scope of authority. However the principal can never be legally responsible for the intentional conduct of an agent outside the course and scope of her agency.

### INSTRUCTION NO. 17

The conduct of an employee is within the scope of employment if it is of the kind the employee is employed to perform; it occurs substantially within the authorized time and

---

P.3d 774, 783–84 (Wyo. 2009).  We reached a similar conclusion in *Whitham v. Feller*, 2018 WY 43, ¶ 20, 415 P.3d 1264, 1268 (Wyo. 2018).  In this case, Ms. Elsner alleged in her complaint and amended complaint that Ms. Nelisse and all other Legacy staff were acting in the scope of their employment when they committed the act(s) that harmed Ms. Wilkey.  Therefore, as in *Krenning* and *Whitham*, she sufficiently alleged they were acting within the scope of their duties under the WGCA.  In addition, The Legacy proposed giving the instruction on scope of employment, and it did not argue the district court should give an instruction on scope of duties.

[2] Although written Instructions 11 and 12 in the record contain references to an agent's "implied authority," the district court orally redacted those sections when it read the instructions to the jury because implied authority was not an issue in the trial.

space limits; and it is motivated, at least in part, by a purpose to serve the employer. It is not necessary that a particular act or failure to act be expressly authorized by the employer but such act must bear some genuine relationship to the business of the employer. The employer is not acting within the scope of employment if engaged in a pursuit or activity of the employee's own at the time.

The employer is legally responsible for the negligence of an employee acting within the scope of employment.

The jury was tasked with determining whether Ms. Nelisse's negligent actions, not her intentional actions on July 1, 2019, were within the scope of her duties.

[¶68] Although the instructions could have been crafted to better comport with the definitions of a public employee and scope of duties under the WGCA, when taken as a whole, they adequately instructed the jury on the proper principles of law that applied to this case. The Legacy failed to establish any prejudice resulted from instructing the jury to determine whether Ms. Nelisse was an agent rather than a servant or on the scope of agency and employment rather than duties. Thus, any such error does not require reversal. *See Hannifan*, 2008 WY 65, ¶ 23, 185 P.3d at 689 (quoting *Parrish, Inc.,* 2006 WY 33, ¶ 7, 130 P.3d at 505).

### B. Maintaining Direct and Vicarious Liability Claims Without Bifurcation

[¶69] The Legacy asserts Ms. Elsner could not assert both direct and vicarious liability claims against it. Citing to *Beavis v. Campbell County Memorial Hospital*, 2001 WY 32, 20 P.3d 508 (Wyo. 2001), The Legacy asserts the negligent supervision claim should have been bifurcated, and Ms. Elsner should have been required to first establish Ms. Nelisse was negligent before the entity could be liable for that negligence.[3]

[¶70] In *Beavis*, we recognized it may be appropriate to bifurcate a direct negligence claim against an employer from a vicarious liability claim when the direct liability claim rests

---

[3] With respect to Ms. Elsner's negligent retention claim, The Legacy alleges the jury was required to make a predicate finding Ms. Nelisse was negligent. The jury was instructed to find for Ms. Elsner on the negligent retention claim, it had to find Ms. Nelisse "became unfit or incompetent to perform the work for which she was hired," The Legacy management knew or should have known she was "unfit and/or incompetent," and The Legacy's negligence in retaining Ms. Nelisse was a substantial factor in causing harm to Ms. Wilkey. The jury ultimately found The Legacy did not negligently retain Ms. Nelisse, so to the extent the district court erred in the manner it instructed the jury regarding this claim, this issue is moot, and we will not address this issue any further. *Powder River Basin Res. Council*, 2020 WY 127, ¶ 10, 473 P.3d at 297.

upon the predicate negligence of an employee. 2001 WY 32, ¶¶ 17–19, 20 P.3d at 514–16. Then, in *Bogdanski v. Budsik*, we adopted the *McHaffie* rule and held when the liability of a principal is wholly dependent upon the negligence of an agent and the principal admits vicarious liability, any action for direct negligence against the principal becomes duplicative and cannot be pursued. 2018 WY 7, ¶¶ 22–23, 408 P.3d 1156, 1162–63 (Wyo. 2018). However, in *JTL Group, Inc. v. Gray-Dockham*, we held "*Bogdanski* does not stand for the broad proposition a principal can never be listed on the verdict form for a direct negligence claim, particularly when the actions of the principal are separate and independent from the agent's actions." 2022 WY 67, ¶ 24, 510 P.3d 1060, 1066 (Wyo. 2022).

[¶71] In this case, Ms. Elsner asserted The Legacy committed acts of direct negligence that were separate and independent from the actions of its agents and employees including, but not limited to: failing to prevent falls; failing to conduct screenings of employees; failing to develop or implement procedures for investigating allegations of abuse or neglect; failing to provide the required structures or processes to meet the needs of the residents; failing to provide sufficient, qualified, competent staff; failing to train staff in how to react and respond appropriately to resident behavior; failure to provide an effective orientation and training program; failing to provide oversight and supervision of staff to assure policies were implemented; and failing to maintain its non-delegable duty of safety and care to its residents. Because these alleged acts of negligence were independent of any vicarious liability claims for the negligence of The Legacy's ordinary employees, the district court did not err by allowing Ms. Elsner to pursue both claims simultaneously. *See JTL Group Inc.,* 2022 WY 67, ¶ 24, 510 P.3d at 1066.

[¶72] Wyoming law allows a plaintiff to simultaneously pursue direct and vicarious liability claims when the direct liability claim is premised on the actions of the principal that are separate and independent from the actions on the agent. *JTL Group, Inc*., 2022 WY 67, ¶ 24, 510 P.3d at 1066. When viewing the instructions and verdict form in the light of the entire trial, they adequately informed the jury about the proper principles of law that applied to direct and vicarious liability claims, and they did not confuse or mislead the jury. *See Hannifan*, 2008 WY 65, ¶ 23, 185 P.3d at 689 (quoting *Parrish,* 2006 WY 33, ¶ 7, 130 P.3d at 505); *Frost*, 2006 WY 155, ¶ 6, 148 P.3d at 19 (quoting *Shrader,* 882 P.2d at 832).

III. *Did the district court abuse its discretion when it denied The Legacy's motion in limine related to falls?*

[¶73] The Legacy asserts the district court abused its discretion when it denied the facility's motion in limine to preclude any discussion related to Ms. Wilkey's falls. The Legacy asserts Ms. Elsner's claim related to the falls was barred by her failure to comply with the WGCA. The Legacy asserts Ms. Elsner's notice of claim did not reference the falls, and her failure to submit a timely notice of claim regarding these falls as provided in

Wyoming Statute § 1-39-113 precluded Ms. Elsner from mentioning the falls as a basis for liability against The Legacy.

[¶74] The district court addressed this same argument when it denied The Legacy's motion in limine. It found The Legacy failed to raise the affirmative defense of failure to satisfy a condition precedent, and it had therefore waived that defense. We agree with the district court.

[¶75] "The purpose of a motion in limine is to obtain the court's pretrial ruling on the admissibility of evidence." *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 18, 177 P.3d 219, 225 (Wyo. 2008) (quoting *Reichert v. Phipps,* 2004 WY 7, ¶ 4 n.1, 84 P.3d 353, 355 n.1 (Wyo. 2004)). "As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court." *Id.* (citing *Capshaw v. WERCS,* 2001 WY 68, ¶ 5, 28 P.3d 855, 857 (Wyo. 2001)). "A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances." *Sorum v. Sikorski*, 2024 WY 124, ¶ 11, 559 P.3d 153, 160 (Wyo. 2024) (quoting *McBride-Kramer v. Kramer*, 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019)). "[T]he ultimate issue is whether the court could reasonably conclude as it did." *Id.* The burden is on the party who lost the motion to establish an abuse of discretion. *Three Way, Inc.*, ¶ 18, 177 P.3d at 225 (citing *Brown v. State,* 2005 WY 37, ¶ 12, 109 P.3d 52, 56 (Wyo. 2005)).

[¶76] In *Harmon v. Star Valley Medical Center*, we held "the presentation of a notice of claim is a condition precedent to suing a governmental entity and is not jurisdictional, [and] an assertion that a plaintiff did not comply with the WGCA and Wyoming Constitution is an affirmative defense subject to waiver." 2014 WY 90, ¶ 51, 331 P.3d 1174, 1188 (Wyo. 2014). We also held this affirmative defense is waived if it is not "promptly" raised. *Id.* at ¶ 49, 331 P.3d at 1188. If a governmental entity believes a claimant has failed to perform a condition precedent, W.R.C.P. 9(c) requires the entity to assert the denial of the performance of the condition precedent "specifically and with particularity." *Id.* at ¶ 51, 331 P.3d at 1188 (citing *Brown v. City of Casper,* 2011 WY 35, ¶ 54, 248 P.3d 1136, 1149 (Wyo. 2011) (Golden J., concurring)). Here, The Legacy failed to assert the affirmative defense of a lack of compliance with the WGCA in its answer to the amended complaint, let alone with the particularity required by W.R.C.P. 9(c). The Legacy did not raise this issue until it filed additional briefing in support of its motion in limine, approximately three weeks before trial was scheduled to begin and almost a year after the amended complaint was filed. The Legacy makes no attempt to explain how this year delay constitutes promptly asserting this affirmative defense.

[¶77] Because The Legacy failed to promptly raise this affirmative defense, it waived its objection to Ms. Elsner's alleged noncompliance with Wyoming Statute § 1-39-113. *Harmon,* 2014 WY 90, ¶ 52, 331 P.3d at 1189. Therefore, the district court did not abuse its discretion when it denied The Legacy's motion in limine relating to falls.

22

## IV. Did the district court err when it reduced the damages?

[¶78] In her appeal, Ms. Elsner asserts the district court's judgment is inconsistent with the jury's findings on the special verdict form. She asserts the jury found Ms. Nelisse was negligent and she was acting as The Legacy's agent, making The Legacy vicariously liable for her negligent actions under Wyoming Statutes §§ 1-39-103 et seq. She asserts by reducing the damages, the district court made the erroneous determination The Legacy was not vicariously liable for any of Ms. Nelisse's conduct because all her conduct was intentional.[4] However, the verdict form asked the jury to determine whether Ms. Nelisse acted negligently, not intentionally. Ms. Elsner asserts the judgment is "completely inharmonious" with the verdict form because it sets aside the jury's findings Ms. Nelisse was negligent, she was an agent of The Legacy, and she was acting within the scope of her agency when she caused injury to Ms. Wilkey. She argues the only way to harmonize the verdict is to enter a judgment finding The Legacy 100% liable for the full amount of damages awarded by the jury.

[¶79] The Legacy concedes if Ms. Nelisse's employment status "made a difference, [Ms. Elsner] would be correct and the district court would have improperly reduced [her] damages." However, The Legacy asserts the district court correctly reduced the damages because Ms. Nelisse was either an independent contractor or an "ostensible agent," and it cannot be vicariously liable for her conduct, even if that conduct was negligent.[5]

---

[4] Ms. Elsner also asks us to find The Legacy was liable for Ms. Nelisse's intentional conduct, and the district court erred when it granted The Legacy's Rule 50 motion in this regard. However, while she cites to principles that allow non-governmental employers to be responsible for certain intentional conduct of their employees, she cites to no provision of the WGCA that waives governmental immunity for the intentional acts of public employees. As discussed above, the only provision of the WGCA that applies to intentional conduct is Wyoming Statute § 1-39-112, which applies to the tortious conduct of peace officers. *See The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 43, 395 P.3d 167, 178 (Wyo. 2017). Ms. Elsner made no attempt to argue how Ms. Nelisse's intentional conduct was covered by the WGCA. "We do not consider arguments which are not supported by cogent argument and citation to pertinent legal authority." *Eiden Constr., LLC v. Hogan & Assocs. Builders, LLC*, 2024 WY 138, ¶ 105, 561 P.3d 304, 331 (Wyo. 2024) (citing *Vassilopoulos v. Vassilopoulos,* 2024 WY 87, ¶ 28, 557 P.3d 725, 734 (Wyo. 2024)). Therefore, we will not address this argument.

[5] The Legacy also asserts Ms. Elsner should be judicially estopped from arguing the damages could not be reduced because she did not object to the language in the jury verdict or in Instruction No. 23, which stated the damages would be reduced, and she referenced this language in her closing argument. The Legacy made this same argument when it submitted its proposed judgment to the district court. Because the district court did not articulate reasons for its decision to reduce the damages, we do not know if it did so based on a finding Ms. Nelisse's conduct was intentional, a finding The Legacy was somehow not vicariously liable for her conduct for other reasons, or a finding of judicial estoppel. However, "the doctrine of judicial estoppel is narrow and applies only to changing positions as to facts. Inconsistent claims and legal conclusions do not implicate judicial estoppel." *Rafter J. Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 45, 558 P.3d 562, 575 (Wyo. 2024) (internal citations omitted). Further, judicial estoppel

23

[¶80]   Whether a judgment is consistent with a jury's findings in a special verdict form is an issue of law we review de novo. *Loya v. Wyo. Partners of Jackson Hole, Inc.*, 2004 WY 123, ¶ 5, 99 P.3d 972, 975 (Wyo. 2004).   Objections to a special verdict form must be raised before it is submitted to the jury, or the parties are deemed to have waived trial by jury on any question of fact not included in the special verdict form. *Id.*   The district court has a duty to attempt to harmonize the jury's answers "if it is at all possible under a fair reading of the responses." *Id.*   In addition, "where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Id.* (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil 2d* § 2510 at 200–70 (2001 Supp.)).

[¶81]   During the jury instruction conference, the district court reminded the parties it had ruled under the WGCA The Legacy could not be liable for the intentional and/or criminal acts committed by Ms. Nelisse on July 1, 2019.   However, the district court emphasized it was making no such ruling regarding the events on June 28, 2019, and it was going to be up to the jury to "figure out" if that conduct was intentional.   At the end of the instruction conference, the district court reminded the parties "the issues surrounding the events of July 1st are -- well, the issues surrounding the events on July 1st are not questions for the jury's consideration with respect to liability of The Legacy."

[¶82]   On the special verdict form, the jury was only asked to determine whether Ms. Nelisse acted negligently.   The Legacy did not request a special interrogatory asking the jury to determine whether she acted intentionally.   The jury found Ms. Nelisse acted negligently, and she was an agent of The Legacy.   As discussed above, for the purposes of this case, the district court intended agent to be synonymous with servant, and under Wyoming Statutes §§ 1-39-103, 1-39-109, and 1-39-110, The Legacy was vicariously liable for damages resulting from bodily injury caused by the negligence of its servants who were: 1) acting within the scope of their duties in the operation of a public hospital or outpatient health care, or 2) health care providers who committed malpractice.

[¶83]   Although the verdict form only referenced negligent conduct, it still instructed the jury to apportion fault between Ms. Nelisse and the Legacy.   Ms. Elsner raised her concern about the confusion that could arise from the proposed verdict form requiring the jury to apportion fault between Ms. Nelisse and The Legacy:

> Your Honor, I guess my only thought is that I think there's going to be a certain amount of confusion in the

---

does not apply to inconsistent positions taken within the same case. *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 20 n.2, 530 P.3d 288, 294 n.2 (Wyo. 2023).   Therefore, even if her positions were inconsistent, judicial estoppel does not apply to Ms. Elsner's legal conclusions regarding the reduction of damages, and those conclusions cannot be the basis for judicial estoppel.   If district court based its decision on judicial estoppel, it committed legal error.

concepts between negligence and intentional conduct in the way that this new verdict form is constructed. I think that the [c]ourt has already ruled that The Legacy is not vicariously responsible for the intentional conduct of [Ms.] Nelisse.

The jury is now being asked if [Ms.] Nelisse engaged in negligent conduct for which there will be vicarious liability. I guess my only comment is, if the jury apportions damages or apportions damages to [Ms.] Nelisse, that would be -- The Legacy would be vicariously liable for that, because the questions are premised on negligence and not intentional conduct.

So I just want that going on the record that, if there's an apportionment to [Ms.] Nelisse of 30 percent or 50 percent, or whatever it happens to be, that there's not going to be an argument that, well, this is apportionment for intentional conduct for which there can be no vicarious liability.

The Legacy argued the verdict form needed to apportion fault between The Legacy and Ms. Nelisse because the case of *Board of Teton County Commissioners ex rel. Teton County Sheriff's Department v. Bassett*, 8 P.3d 1079, 1083–84 (Wyo. 2000), required apportionment of all types of fault, not just ordinary negligence. The district court agreed with The Legacy.

[¶84] In *Bassett*, we held a joint tortfeasor who acts willfully is properly included on a verdict form in a negligence case for purposes of allowing a jury to compare a defendant's negligence to a non-party actor's willful conduct when apportioning liability. *Id.* at 1084. However, we have also held "*Bassett*'s holding that § 1-1-109 requires 'all species of culpable conduct' to be compared is not as broad as that decision might suggest." *Erdelyi v. Lott*, 2014 WY 48, ¶ 40, 326 P.3d 165, 176 (Wyo. 2014). *Bassett* addresses only cases where a non-party's willful act needs to be compared to a defendant's negligent conduct. *Id.* at ¶ 41, 326 P.3d at 176.

[¶85] In this case, if Ms. Nelisse was found to be negligent and an agent/servant of The Legacy, there was no need to apportion liability between her and The Legacy because The Legacy would be vicariously liable for the full amount of damages. *See Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 18, 366 P.3d 489, 495–96 (Wyo. 2016) (citing *Cockburn v. Terra Res., Inc.,* 794 P.2d 1334, 1339 (Wyo. 1990)) (stating an employer is "strictly liable" for the negligence of a supposed independent contractor who turns out to be a servant or employee). Under *Bassett* and Wyoming Statute § 1-1-109, the jury only needed to apportion fault if it found Ms. Nelisse was an independent contractor or if it found her actions were either not negligent or were outside the scope of her duties.

25

[¶86]   Here, the verdict form did not instruct the jury to apportion any fault to Ms. Nelisse if she was found to be an independent contractor.  Further, it instructed the jury if it found Ms. Nelisse was an agent of The Legacy, but she was not negligent, they should "proceed to Question 8 and put zero (0) in the percentage next to [Ms.] Nelisse, CNA."  Question 8 asked the jury:

> 8. What percentage of the total fault (negligence) is attributable to each of the following? (Your total must equal 100%).
>
> The Legacy                    _____
>
> Crystal Nelisse, CNA          _____
>                    TOTAL      100%

The jury was not asked to compare The Legacy's negligence with Ms. Nelisse's willful conduct as discussed in *Bassett*, nor was it asked to assign a percentage of fault to Ms. Nelisse if it found she was not an agent of The Legacy but was still a cause of Ms. Wilkey's injuries.  The Legacy did not object to the lack of a special interrogatory regarding intentional conduct, nor did it object to the phrasing of Question 8.  Failing to request such an interrogatory or make such an objection operates as a waiver of that objection or a right to have that question of fact determined by the jury. *Loya*, 2004 WY 123, ¶ 5, 99 P.3d at 975.

[¶87]   Because there is a view of the case that makes the jury's answers to the special interrogatories consistent, we must resolve it that way. *Id.* (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil 2d* § 2510 at 200–70).  The jury found Ms. Nelisse's conduct was negligent.  It further found she was acting as an agent/servant of The Legacy at the time she committed this negligent conduct.  By finding she was an agent, the jury implicitly found this conduct was within the scope of her agency/duties.  Therefore, The Legacy is vicariously liable for Ms. Nelisse's negligent conduct.  Any apportionment of "fault" to Ms. Nelisse is irrelevant because The Legacy is vicariously liable for any percentage of fault assigned to Ms. Nelisse. *See Merit Energy Co., LLC*, 2016 WY 3, ¶ 18, 366 P.3d at 495–96 (citing *Cockburn,* 794 P.2d at 1339).

[¶88]   The district court's decision to reduce the amount damages by the percentage of fault allocated to Ms. Nelisse is inconsistent with the jury's findings and Wyoming law.  The judgment must be reversed, and this case must be remanded to the district court with instructions to enter a judgment that is consistent with the jury's special interrogatories.

## CONCLUSION

[¶89]   The district court did not err when it denied The Legacy's renewed motion for judgment as a matter of law.  There was a sufficient evidentiary basis that would have

allowed a reasonable jury to find for Ms. Elsner on her direct and vicarious liability claims. Because more than one reasonable inference could be drawn from the evidence, the district court had to deny The Legacy's Rule 50 motion for judgment as a matter of law. *Cardenas*, 2024 WY 117, ¶ 12, 558 P.3d at 948. The jury instructions adequately instructed the jury on the proper principles of law that applied to this case and did not cause the jury to reach a verdict that is contrary to Wyoming law. Any error that resulted from using the word agent instead of servant was not prejudicial and does not require reversal. *Hannifan*, 2008 WY 65, ¶ 23, 185 P.3d at 689 (quoting *Parrish,* 2006 WY 33, ¶ 7, 130 P.3d at 505). The district court did not abuse its discretion when it denied The Legacy's motion in limine related to falls because The Legacy waived its objection to Ms. Elsner's alleged non-compliance with the notice of claim requirement of the WGCA by failing to promptly assert this affirmative defense. *Harmon,* 2014 WY 90, ¶¶ 51-52, 331 P.3d at 1188–89. We affirm the district court's rulings in these respects.

[¶90] The district court erred when it reduced the damages by the percentage of "fault" allocated to Ms. Nelisse. The jury was only asked to determine if Ms. Nelisse acted negligently, not intentionally, and it determined her conduct was negligent. The jury also determined Ms. Nelisse was an agent of The Legacy. For purposes of this case, agent was intended to be synonymous with servant. Because Ms. Nelisse was a servant of a governmental entity, The Legacy was vicariously liable for her conduct carried out in the scope of her agency/duties. By finding she was an agent, the jury implicitly found Ms. Nelisse was acting within the scope of her agency/duties when she negligently caused injury to Ms. Wilkey. We reverse the judgment and remand this case to the district court with instructions to enter a judgment in favor of Ms. Wilkey's estate for the entire $660,000.